# ILLINOIS CENTRAL RAILROAD COMPANY *v.* COMMONWEALTH OF KENTUCKY.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 16.   Argued October 26, 27, 1910.—Decided December 5, 1910.

If the law of the State permits it, the fact that the making of an assessment is delayed does not detract from the authority or the duty of the assessing power to make it.

The fact that the assessment is made by memoranda on the assessment envelope or jacket, does not render it ineffectual as lacking in due process of law because not recorded in a permanent book, and where the state court has held that an assessment so made is good under the law of the State, this court will not hold that it denied the party assessed due process of law or equal protection of the law.

A construction by the state court that an assessment made by the board of assessors cannot enter into an arrangement with the parties assessed contemplating the non-payment of the tax based thereon

does not deprive those parties of any constitutional rights where no ground is shown for impugning the assessment so made.

The Federal Constitution does not preclude a State from requiring a corporation actually controlling and exercising a franchise to pay the tax legally assessed thereon, although not the actual owner of the franchise.

When the record does not show that others similarly situated escaped the taxation imposed on the plaintiff in error, and the state court has declared that if any escaped they are still liable, this court regards the contention of denial of equal protection of the law as without merit.

128 Kentucky, 628, affirmed.

THE facts, which involve the validity of an assessment, are stated in the opinion.

*Mr. Edmund F. Trabue,* with whom *Mr. Blewett Lee, Mr. John C. Doolan* and *Mr. Attilla Cox, Jr.,* were on the brief, for plaintiff in error:

This court has jurisdiction if the state court decided the Federal questions, although first appearing in the petition for rehearing. *Mallett* v. *North Carolina,* 181 U. S. 589, 592; *Leigh* v. *Green,* 193 U. S. 79, 85; *Sullivan* v. *Texas,* 207 U. S. 416, 422.

Even if the envelope indorsement were a record of assessment, the assessment would, nevertheless, deny due process and equal protection because all other railroads of the State were assessed and paid franchise taxes upon a different basis, or method of assessment. *Raymond* v. *Chicago Traction Co.,* 207 U. S. 20.

There is nothing to indicate that the State proposes or ever intends to attempt to undo as to the other companies its action of 1899, and both cannot stand. The case is one of spoliation pure and simple, of an arbitrary exaction without justice or reason. *Railroad Co.* v. *Board,* 85 Fed. Rep. 302, 303; *Nashville &c. Co.* v. *Taylor,* 86 Fed. Rep. 168; *Louisiana Trust Co.* v. *Stone,* 107 Fed. Rep. 305; *National Bank* v. *Kimball,* 103 U. S. 732, 735; *Stanley* v.

*Supervisors,* 121 U. S. 535, 550; *San Francisco Bank* v. *Dodge,* 197 U. S. 70, 81; *Coulter* v. *Railway Co.,* 196 U. S. 599, distinguished; and see *Kentucky Railroad Tax Cases,* 115 U. S. 321, 337.

An assessment is the first element of due process in tax proceedings. Taxation is taking property *in invitum.* It is an exercise of sovereignty. It involves the power to destroy. It must, therefore, be according to due process.

Plaintiff in error was not assessed by the jacket memoranda relied on for the amount sued for, and it is not claimed that there was any assessment against it, or any record of such an assessment. There was no assessment, however, against anyone. The jacket memoranda were simply memoranda for the Board's convenience. It does not appear who made the memoranda, nor for what purpose. A record must have permanency. The Memoranda indorsed upon envelopes have none. Permanency is essential to a tax record as the foundation of title.

Not only is permanency essential to the conception of a record, but every essential proceeding must appear in some written and permanent form in the records of the bodies authorized to act upon them. *Moses* v. *White,* 29 Michigan, 59, 60; 1 Cooley on Taxation, 3d ed., 576, 597; *Clegg* v. *State,* 42 Texas, 610; *Roberts* v. *First National Bank,* 8 N. D. 504; *State* v. *C. & D. Ry. Co.,* 54 S. Car. 564; *Commonwealth* v. *Railroad Co.,* 104 Pa. St. 89; *Wells* v. *McHenry,* 7 N. D. 246.

This defect of jurisdiction cannot be remedied by curative statute. *McReynolds* v. *Longenberger,* 57 Pa. St. 13; *Flannagan* v. *Dunne,* 105 Fed. Rep. 828; *Slaughter* v. *City,* 89 Kentucky, 112, 121; see *Powers* v. *Fuller,* 30 Iowa, 476, 477; *Cassidy* v. *Young,* 92 Kentucky, 227, 232; *Turner* v. *Pewee Valley,* 100 Kentucky, 288, 291; *Pratt* v. *Breckinridge,* 112 Kentucky, 15; *Alexander* v. *Aud,* 120 Kentucky, 105; *Wildharber* v. *Lunkenheimer,* 128 Kentucky, 344, 349.

If a tax liability can be established upon such a basis as this the fortunes of all men are in jeopardy. *Western*

*Union Telegraph Co.* v. *Howe,* 180 Fed. Rep. 44, 52; *Chicago, Burlington & Quincy Ry. Co.* v. *Babcock,* 204 U. S. 585, 593.

Where a tax is levied on property in proportion to its value as determined by a board of assessors, due process of law requires that there be a listing of the property and its valuation as assessed upon a public record. *Allen* v. *McKay,* 139 California, 94; *Thurston* v. *Little,* 3 Massachusetts, 429; *People* v. *Hagadorn,* 104 N. Y. 516; *State* v. *Wabash Ry. Co.,* 114 Missouri, 1; *Kelly* v. *Herrell,* 20 Fed. Rep. 364, 369; *Perkins* v. *Longmaid,* 36 N. H. 507; *People* v. *Weaver,* 100 U. S. 545. As to what is a record see 34 Cyc. 585; 24 Am. & Eng. Ency. of Law, 172; *State* v. *Anderson,* 30 La. Ann. 557, 567; *Heintz* v. *Thayer,* 92 Tex. Sup. Ct. Rep. 658, 50 S. W. Rep. 929.

The entries on the envelopes were not records. Cooley on Taxation, 600. This tax is invalid because it was not made to appear that this board of assessment ever actually assessed the property now charged with the tax. *Pennsylvania R. R. Co.* v. *Montgomery County Pass. Ry. Co.,* 167 Pa. St. 62; *McReynolds* v. *Longenberger,* 57 Pa. St. 13; *Howes* v. *Gillett,* 23 Minnesota, 231; *Hopper* v. *Malleson,* 16 N. J. Eq. 382.

In order for property of a person to be taken from him for the purposes of taxation, a record showing that he has been assessed is just as necessary as a record showing that there was a tax to assess against him.

As to the history of the rule requiring a record, see Art. 37 of Magna Charta in Stat. at L. in the form made in the ninth year of Henry III, confirmed by Edward I, twenty-fifth year of his reign. Dowell's Hist. of Taxation, Eng.; Domesday Book and Beyond; chap. 33, Geo. III, p. 26, Statutes at Large of England, and numerous state statutes in this country.

Due process of law forbids holding the agent for the principal's franchise taxes. Barbour & Carroll's Statutes,

§ 4077. The assessment, if any, is against the Chesapeake Company. The Illinois Company was never the agent of this company so far as operating the property was concerned. *Carstairs* v. *Cochran,* 193 U. S. 10; *Thompson* v. *Kentucky,* 209 U. S. 340; *Hannis Dist. Co.* v. *Baltimore,* 217 U. S. 285, do not apply.

Judgment *in personam* is beyond the Commonwealth's jurisdiction, and, consequently, a deprival of due process. 1 Black, Judg., § 242; *Munday* v. *Vail,* 34 N. J. L. 418; *Reynolds* v. *Stockton,* 43 N. J. Eq. 211.

There are cases in the state courts denying the right to a judgment which is outside the issues, where the question arose upon appeal, and where, therefore, the Federal question of jurisdiction and due process did not arise. *Husted* v. *Vanness,* 158 N. Y. 154; 52 N. E. Rep. 645; *Burns &c. Co.* v. *Doyle,* 71 Connecticut, 742; 71 Am. St. Rep. 237; *Lincoln Bank* v. *Virgin,* 36 Nebraska, 735; 55 N. W. Rep. 218; 38 Am. St. Rep. 747; *Carter* v. *Gibson,* 47 Nebraska, 655; 66 N. W. Rep. 631; *Seamster* v. *Blackstock,* 83 Virginia, 232; *Wade* v. *Hancock,* 76 Virginia, 620; *Ex parte Lange,* 18 Wall. 163, 175; *Windsor* v. *McVeigh,* 93 U. S. 274; *Hovey* v. *Elliott,* 167 U. S. 409; *Reynolds* v. *Stockton,* 140 U. S. 254; *Wetmore* v. *Karrick,* 205 U. S. 141; *Lumber Co.* v. *Knight,* 217 U. S. 257.

*Mr. T. L. Edelin,* with whom *Mr. James Breathitt,* Attorney General of the State of Kentucky, *Mr. Robert B. Franklin* and *Mr. Clem J. Whittemore* were on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

The Commonwealth of Kentucky recovered judgment in this suit against the Illinois Central Railroad Company for the amount of the tax, for the year 1897, upon the franchise formerly belonging to the Chesapeake, Ohio and Southwestern Railroad Company. The recovery

was based upon the fact that the Illinois Central Railroad Company was, at the time to which the tax related, in possession of the railroad, and was operating it under a power of attorney from the purchaser at a judicial sale, and had made the report which was required by the statute relating to the taxation of franchises. The judgment was affirmed by the Court of Appeals of Kentucky. 128 Kentucky, 268. The Illinois Central Company petitioned for a rehearing, and presented the Federal questions now urged under the Fourteenth Amendment of the Constitution of the United States. The court entertained the petition and extended its opinion, holding that no right of the appellant under the Fourteenth Amendment had been violated by the decision. Thereupon this writ of error was brought, and, as the state court passed upon the Federal questions, this court has jurisdiction. *Mallett* v. *North Carolina,* 181 U. S. 589; *Leigh* v. *Green,* 193 U. S. 79.

The validity of the statutes of Kentucky providing for the taxation of franchises is not assailed and nothing is shown which would open to dispute the taxable character of the particular franchise here involved. The plaintiff in error, the Illinois Central Railroad Company, contends that by virtue of the judgment it has been deprived of property without due process of law, *first,* in that there was no assessment upon which to base the recovery of the tax; and *second,* in that it has been held personally liable to pay a tax upon a franchise of which it was not the owner. The plaintiff in error also contends that it has been denied the equal protection of the laws, as it insists that all other railroad corporations were assessed for the purpose of franchise taxation upon a different basis and by a different method, and that, as to other railroad corporations, the assessments similar to the one in question were abandoned.

The gist of the first contention—that there was no

assessment—is that an assessment implies a record and that there was no record but only a memorandum; that an assessment must be a definitive act and that here it was only tentative.

It appears that the railroad of the Chesapeake, Ohio and Southwestern Railroad Company was sold at a judicial sale in the summer of 1896, to Edward H. Harriman, who thereupon, under date of August 19, 1896, executed a power of attorney to the Illinois Central Railroad Company authorizing it "to take charge of the business maintenance and operation of the railroad, . . . together with all the land, real estate, leaseholds easements, . . . and all other corporate property, real and personal lately belonging to the said Chesapeake, Ohio and Southwestern Railroad Company, included in the said sale and conveyance and all the rights, privileges, immunities and franchises whatsoever" which he had acquired. It was expressly authorized to receive "all the earnings of the said railroad," to apply the same to the expenses incurred in its "management, maintenance and operation," and to take all proceedings necessary or expedient for these purposes.

On September 15, 1896, the Illinois Central Company made a report to the Auditor of Public Accounts of Kentucky with respect to the railroad formerly the property of the Chesapeake, Ohio and Southwestern Railroad Company, in accordance with the statute governing the assessment of franchises. This report came before the Board of Valuation and Assessment which was charged under the statute with the duty of making the assessment. It was placed in an envelope, or jacket, on the outside of which a proper form was provided for the entry of the amount of capital, surplus, undivided profits, all other assets, total capital, the amount to be deducted for tangible property, the value of the franchise and the amount of the tax. Below this there were blank spaces for the

insertion of the dates of the first and final notices to the corporation, of the notice to the county clerk and of the payment of the tax. The form upon the jacket was filled out by the insertion of the name of the "Chesapeake, Ohio & Southwestern R. R. Co., Louisville, Ky.," and the date of the report. In the columns provided for the purpose entries were made setting forth the "Total Capital, $6,700,000," "Less Tangible Property, &c., $4,753,339," "Franchise $1,946,661," and "Tax $10,219.97." This is the amount of the tax sued for and recovered in this action.

These entries were made early in the year 1898. The fact that the making of the assessment for the year 1897 was delayed did not detract from the authority and duty to make it. *Southern Railway in Kentucky &c.* v. *Coulter,* 113 Kentucky, 657. That the Board of Valuation and Assessment was authorized to fix the value of the franchise and to make the entries setting forth their determination, and that the entries upon the jacket were in fact made by the Board in the discharge of its duty, do not admit of question. The Commonwealth of Kentucky filed as a part of its petition in the suit a copy of the endorsement on the jacket as a correct copy of the assessment. This was introduced in evidence on the Commonwealth's behalf. The testimony presented in defense did not in any way challenge the authenticity or official character of the jacket entries. On the contrary, the testimony of the former state auditor, who as such was chairman of the Board of Valuation and Assessment, leaves no room for doubt on this point. It also sufficiently appears upon this record, and it is not open to dispute here, that due notice of the assessment was given.

The point urged, in substance, is that the constitutional right of the plaintiff in error has been violated, because the state court has treated the entry on the jacket as a sufficient record of the assessment. It is said that this

cannot be regarded as a record, because it lacks permanency. But this, of course, depends upon the means of preservation and the nature of the filing system adopted. There is no inherent reason why such a record should not be suitably preserved. It is unnecessary to review the numerous authorities which the industry of counsel has collated, for it may be assumed that an assessment should be recorded. It is obvious, however, that the State cannot be denied the right to collect its taxes, and the assessment cannot be held to have been in violation of the Constitution of the United States because for convenience it was recorded—in the form provided for the purpose—upon the jacket inclosing the report of the railroad company, instead of in a separate book. If the Board did not proceed properly to make the assessment according to the statute, the corporation aggrieved had its remedy; if the assessment was otherwise properly made it cannot be defeated because the determination was set forth in the manner described.

The fact that the assessment was entered under the heading "Chesapeake, Ohio & Southwestern R. R. Co., Louisville, Ky.," does not invalidate it. The franchise which was the subject of the assessment had belonged to the Chesapeake, Ohio and Southwestern Railroad Company and the entry suitably identified it. The report which was made by the Illinois Central Company used the same description. The information given by this report, prefacing the amount of capital, value of assets, earnings, etc., is as follows:

"Name of corporation—Chesapeake, Ohio & Southwestern Railroad company.

"Name the principal place of business of the corporation, company or association you represent—Louisville, Kentucky.

"Give the name and official position of the officer making the report.

"Name, J. C. Welling. Position, Vice President, I. C. R. R. Co.—Agt.

"The kind of business in which the said corporation, company or association is engaged.

"Operating Railroad from Louisville, Ky. to Memphis, Tennessee."

The conclusion that the assessment entered in this manner was made in accordance with the law of the State of Kentucky was necessarily involved in the decision of the Court of Appeals. And the fact that, upon the report made by the plaintiff in error in the circumstances stated, the assessment was entered under the name of the company which had formerly owned the franchise furnishes no ground for the contention here that there has been an absence of due process of law. *Castillo* v. *McConnico*, 168 U. S. 674, 682–684; *Witherspoon* v. *Duncan*, 4 Wall. 210.

But it is said that the assessment was only tentative and that the entry was merely a memorandum. It does not appear to be tentative upon its face. That it was such in fact is a conclusion sought to be derived from the testimony of the former state auditor. His testimony was to the effect that he "did not expect any tax to be paid" on the assessment; that the franchise assessments, which were made in 1898, were opposed, that there was considerable discussion of the matter with the railroads, and that finally in 1899 an agreement was reached by which the assessments of 1898 were abandoned. He says that "in the matter of the Illinois Central Railroad Company, we agreed not to assess the C. & O. S. W. for the first two years, we agreed that,—in other words, that the amount we assessed against the Illinois Central should be in full for all the properties they controlled for four years, this assessment, and the one sent out as final in 1898 we reconsidered and declined to assess any franchise tax against that road for one or two years, for the first years, —two years, I think. In other words, the agreement of

the Board was to reconsider these assessments entirely, and take them back, in consideration of the fact that the road would pay the next two assessments on the basis agreed upon." The question is at once presented whether after making the assessment in 1898 the Board had any authority to deal with it in this manner or to enter into such a bargain with the railroad. This is a matter of state law and the Court of Appeals of Kentucky has held that the Board had no such power and that the first assessment stood. In its opinion the court said:

"The board made the assessment in the way that all other assessments were made. It gave notice of the assessment to the railroad company as required by statute and at the end of thirty days it gave notice, as provided by the statute, that the assessment had become final. When this had been done, the matter passed beyond the control of the board. A final assessment had been had as provided by law, and if any injustice was done the taxpayer it was due entirely to his failure to appear before the board and ask a reduction of the assessment. No reliance could be placed in such proceedings if the validity of the record was made to depend upon the secret intentions of the assessing officer. The validity of their actions depends upon what they do and not upon their undisclosed purposes. When the assessment had become final and the Railroad Company owed the State the amount of taxes thus fixed, the assessing officers were without authority afterward to make any agreement with the railroad to the effect that if the railroad would pay the taxes for 1899, they would forego collecting the taxes for the previous years."

And on the petition for rehearing the court added this statement:

"When the board made an assessment and sent out the preliminary and the final notices as provided by the statute that the assessment had been made its action was final

and the legal effect of its action must depend on what they did and not on the secret intentions of the Auditor."

This construction of the powers of the state officers under the statutes of the State relating to franchise assessments—this determination with regard to the finality of the assessment in question—does not violate any constitutional right of the plaintiff in error. The assessment was made in accordance with the law of the State; it was, under that law, a final assessment and no ground is shown here for impugning it.

It is insisted further that the enforcement of the tax by a judgment *in personam* against the plaintiff in error constitutes an unconstitutional deprivation of property, that is, assuming that under the statutes of the State, as construed by its highest court, the plaintiff in error was liable for the tax, nevertheless it could not properly be held because it was not the owner of the franchise upon which the tax was laid. But by virtue of the arrangement with the purchaser at the judicial sale the plaintiff in error was operating the railroad and was in possession and full control of the railroad property and its earnings. It cannot be doubted that under the Federal Constitution the State is not precluded from fixing liability for the payment of the tax, to which the franchise is subject, upon the corporation actually exercising the franchise within the State and in control of the railroad property and its earnings. There is no constitutional obligation requiring it to look further in order to secure payment of the tax which it is entitled to levy. *Carstairs* v. *Cochran*, 193 U. S. 10, 16; *National Bank* v. *Commonwealth*, 9 Wall. 353.

It is also contended that plaintiff in error has been denied the equal protection of the laws upon the ground that other railroad corporations have not been assessed upon the same basis or by the same method, or have not been held to the payment of taxes upon such an assessment. This defense was not pleaded in the answer of the

Illinois Central company, and, in any event, the meager testimony introduced at the hearing is utterly insufficient to afford a basis for the argument. It does not satisfactorily appear that other railroad corporations were not assessed in the same way and at the same time, or, assuming that they were so assessed, that they are not liable to pay taxes accordingly. The Court of Appeals of the Commonwealth in denying the petition for a rehearing said: "As shown by the opinions of this court cited in the opinion herein, taxes have been imposed based on the assessments in controversy. All other tax-payers than railroads were taxed and if some railroads escaped, it is no reason that others should go free while all tax-payers of other classes paid their taxes. If any railroads escaped they are still liable for their taxes unless barred by limitation."

No conclusion to the contrary is justified by the record and the contention that the plaintiff in error has been denied the equal protection of the laws, as the case lies before us, is without merit.

*Judgment affirmed.*