## ROWE v BRADEN et

Ohio Appeals, 1st Dist, Hamilton Co

Decided Oct 10, 1932

Herbert F. Koch, Cincinnati, and Rufus B. Hall, Jr., Cincinnati, for plaintiff.

Gilbert Bettman, Attorney General, Columbus, Wm. J. Ford, Columbus, and Thomas C. Lavery, Columbus, for the Tax Commission of Ohio.

Robert N. Gorman, Prosecuting Attorney, Cincinnati, Leonard J. Freiberg, Cincinnati, and Jack B. Josselson, Cincinnati, for Auditor and Treasurer of Hamilton County.

Paxton & Seasongood, Cincinnati, and Waite, Schindel & Bayless, Cincinnati, amici curiae.

HAMILTON, J.

The Intangible Tax Law of Ohio (114 Ohio Laws, 714) was passed pursuant to the authorization of an amendment to the Constitution empowering the Legislature to classify property for taxation.

The constitutionality of the Classified Tax Law, as passed by the Legislature, was challenged in the case of Lampson v Cook, unreported, decided by the Court of Appeals of Ashtabula County, April 8, 1932. In that case the constitutionality of the entire new tax law was sustained. We are content with the pronouncement of the law of the Seventh District Court of Appeals in the case of Lampson v Cook, and this disposes of the question of discrimination.

This brings us to the question of the claimed denial of due process of law within the protection of the Fourteenth Amendment of the Federal Constitution by the imposition of the tax.

As to the right to tax such an income, involving the constitutional question, it seems to be sufficient to refer to the case of Maguire v Trefry, Tax Commissioner, 253 U. S., 12, 40 S. Ct., 417, 64 L. Ed., 739. The facts in that case are parallel with those in the case at bar. The taxing law of Massachusetts is more clearly defined and is more explicit than is the Intangible Tax Law of Ohio. The act imposing the tax in the state of Massachusetts (St. 1916, c. 269, §9) provides:

"If an inhabitant of this commonwealth receives income from one or more * * * trustees, none of whom is an inhabitant of this commonwealth or has derived his appointment from a court of this commonwealth, such income shall be subject to the taxes assessed by this act, according to the nature of the income received by the * * * trustees."

The plaintiff in the Maguire case was a resident of Massachusetts, and was taxed upon income from a trust created by the will of one Matilda P. MacArthur, formerly of Philadelphia. The plaintiff, under the will of the decedent, was the beneficiary of a trust thereby created, and sought to enjoin the tax. The securities were held in trust by the Girard Trust Company of Philadelphia. The securities, the income from which was held taxable in Massachu-

setts, consisted of the bonds of three corporations and certain certificates of the Southern Railway Equipment Trust. These securities were held in trust and were in the possession of the trustee, the Girard Trust Company of Philadelphia. The trust was being administered under the laws of Pennsylvania. The Supreme Judicial Court of Massachusetts held the tax to be valid.

The Supreme Court of the United States, thereby affirming the validity of the tax, said at page 17 of 253 U. S., 40 S. Ct., 417, 64 L. Ed., 739:

"We find nothing in the Fourteenth Amendment which prevents the taxation in Massachusetts of an interest of this character, thus owned and enjoyed by a resident of the State."

The Chief Justice of Massachusetts, speaking for the Supreme Judicial Court (230 Mass., 503, 120 NE, 162) made the following statement, which is quoted by the Supreme Court of the United States in its opinion:

"The income tax is measured by reference to the riches of the person taxed actually made available to him for valuable use during a given period. It establishes a basis of taxation directly proportioned to ability to bear the burden. It is founded upon the protection afforded to the recipient of the income by the government of the Commonwealth of his residence in his person, in his right to receive the income and in his enjoyment of the income when in his possession. That government provides for him all the advantages of living in safety and in freedom and of being protected by law. It gives security to life, liberty and the other privileges of dwelling in a civilized community. It exacts in return a contribution to the support of that government measured by and based upon the income, in the fruition of which it defends him from unjust interference. It is true of the present tax, as was said by Chief Justice Shaw in Bates v Boston, 5 Cush. (Mass.) 93, at page 99, 'The assessment does not touch the fund, or control it; nor does it interfere with the trustee in the exercise of his proper duties; nor call him, nor hold him, to any accountability. It affects only the income, after it has been paid by the trustee' to the beneficiary."

Quoting further from the opinion of the United States Supreme Court in the Maguire case, at page 16 of 253 U. S., 40 S. Ct.,

418, 64 L. Ed., 739:

"In Fidelity & Columbia Trust Company v Louisville, 245 U. S., 54 (38 S. Ct., 40, 62 L. Ed., 145, L.R.A., 1918C, 124), we held that a bank deposit of a resident of Kentucky in the bank· of another State, where it was taxed, might be taxed as a credit belonging to the resident of Kentucky. In that case Union Refrigerator Transit Co. v Kentucky, supra (199 U. S., 194, 26 S. Ct., 36, 50 L. Ed., 150, 4 Ann. Cas., 493), was distinguished, and the principle was affirmed that the State of the owner's domicile might tax the credits of a resident although evidenced by debts due from residents of another State. This is the general rule recognized in the maximum 'mobilia sequuntur personam,' and justifying except under exceptional circumstances, the taxation of credits and beneficial interests in property at the domicile of the owner. * * *

"It is true that the legal title of the property is held by the trustee in Pennsylvania. But it is so held for the benefit of the beneficiary of the trust, and such beneficiary has an equitable right, title and interest distinct from its legal ownership. 'The legal owner holds the direct and absolute dominion over the property in the view of the law; but the income, profits, or benefits thereof in his hands, belong wholly, or in part, to others.' 2 Story's Equity, 11th Ed., §964. It is this property right belonging to the beneficiary, realized in the shape of·income, which is the subject matter of the tax under the statute of Massachusetts."

It is argued that the Maguire case has no application to the case here under consideration, for the reason that Massachusetts has an income tax, and since Ohio has not actually an income tax the case does not apply. This seems to the majority of the court to be a distinction without a difference. The law of Ohio is explicit that the only property sought to be taxed in Ohio, and the only property taxed, is the income actually paid to the plaintiff, in round numbers $97,000. Whether this $97,000 be· classed as an equitable interest in the trust res, or as a· right, or a chose in action against the trustee, it certainly becomes property in the hands of the beneficiary when paid.

Much has been written as to the nature of the property derived from trusts in its relation to the cestui que trust. Some writers contend that the right to receive income· from the trust is in the nature of property. Other writers classify the right to receive the income as a chose in action, with the legal right to enforce the payment in an action against the trustee, the legal holder of the title. Others hold that the right to receive the income is a property right and becomes property when received. However it may be classified, the right of the state of the domicile of the beneficiary to tax the income received has always been upheld.

Being taxable, has the state in its Intangible Tax Law levied a tax on the income admittedly received from the· trust?

Sec 5328-1, GC (114 Ohio Laws, 717), provides:

"All moneys, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation, excepting as provided in this section or as otherwise provided or exempted in this title * * *."

Such property as is in question here is not exempt under the law. As the majority of the court views it the property is income, and, under this section, is subject to taxation. It might also be classified under the term "investment." §5323, GC (114 Ohio Laws, 715), in defining "Investments," classifies, among other things, "and other incorporeal rights of a pecuniary nature whatsoever from which income is or may be derived, however evidenced, excepting * * *."

The section further defines "investments" as:

"All equitable interests, life or other limited estates and annuity interests in any investment hereinbefore described, or in any fund made up of any such investments, wherever located."

Sec 5638, GC (114 Ohio Laws, 722), levies a tax on investments of "five per centum of income yield."

"Income· yield" is defined in §5389 GC (114 Ohio Laws, 721, 722), in the case of equitable interests, as "the cash distributions of income so made."

Bearing on the intention of the Legislature, we find §5392 GC, (114 Ohio Laws, 742), which provides against the creation of trusts for the purpose of avoiding payment of an assessment or tax on the equitable interests of resident beneficiaries.

Further, as showing the intention of the Legislature, we· find this recommendation of· the tax committee concerning intangibles submitted to the Legislature at the

time of the passing of the act. The committee states:

"The principal difficulty in taxing intangibles is to reach investments in private hands, because of the ease with which such investments may be concealed. The bill provides a tax on such intangibles owned on December thirty-first of each year, the tax to be measured by the income derived from such intangibles during the preceding calendar year, and to be equal to five per cent. of such income. This method is very similar to the Massachusetts income tax on securities, and that tax appears to be better observed and better enforced than the taxes of any other state. * * * Furthermore, for practical and constitutional reasons, it is far easier to reach the income from trusts outside of the State by taxing them on an income basis than on a principal basis. If the Ohio tax can be escaped by the simple expedient of establishing a trust in New York, any attempt to tax intangibles here will be a farce."

It would extend this opinion to an unreasonable length to undertake to answer all of the arguments presented.

Enough has been stated to show that a great deal may be said pro and con concerning taxation of the character in question.

The chief case relied upon by counsel for plaintiff is the case of Safe Deposit & Trust Co. of Baltimore v Commonwealth of Virginia, 280 U. S., 83, 50 S. Ct., 59, 74 L. Ed., 180, 67 A.L.R., 386. That case is not controlling here, for the reason that the Commonwealth of Virginia sought to levy a tax on the corpus of the trust by reason of the fact that the beneficiaries, residents of Virginia, were the real owners of it. That is not the case under consideration. There is no attempt here to levy the tax on the trust res. Under whatever name it may be designated, the property, to wit, the distributive income, is what is sought to be taxed under the laws of Ohio. It is the thing itself which controls, and not the name under which it may be designated. Had the Legislature designated this fund as income, the Maguire case would be on all fours and controlling. Instead of designating the property specifically as income, the law of Ohio has classified it as "Intangibles," or "Investments," or as "Equitable Interest," but it is the income in the nature of property that is sought to be taxed, and, as such, is subject to taxation. The rate of taxation is based on the income actually received.

The majority of the court is of opinion that no constitutional right of the plaintiff is invaded in levying the tax, and that the law does not unduly discriminate in the classification thereof.

The petition will therefore be dismissed at the costs of the plaintiff.

Petition dismissed.

CUSHING, J, concurs.

ROSS, PJ, dissenting:

I submit the following as my dissent from the majority opinion of this court:

This is an appeal from the Court of Common Pleas of Hamilton County.

The action is brought to enjoin the levy, assessment, and collection of a state tax upon intangibles, defined by the Ohio law as "investments."

The conceded facts are:

The plaintiff is a resident of Hamilton County, Ohio, and her husband, until his death, was also a resident of Hamilton County. During his lifetime he created an irrevocable trust, the corpus of which was placed in the custody and control of the Girard Trust Company of Philadelphia, Pennsylvania, and the income was required to be paid to him during his life, and after his death to his widow, the plaintiff, for her life, remainder to the children of plaintiff and her deceased husband.

The trust estate consists wholly of stocks, bonds, and cash, which have continuously been in the custody, possession and control of the trustee in Philadelphia, Pennsylvania, since their acquisition by such trustee.

The trustee in Pennsylvania has paid taxes upon the corpus of the estate lawfully assessed by the state of Pennsylvania.

The plaintiff has received from the trustee during the year 1931 the sum of $97,-845.69, constituting the net income of the trust fund payable to her under the terms of the trust instrument.

The plaintiff is the sole beneficiary during her life of the net income of the trust estate, and has no control over the trustee or the funds in its hands.

Sec 5323, GC, (114 Ohio Laws, 715), provides that the term "investments" includes all "equitable interests, life or other limited estates and annuity interests in any investment" therein described, "or in any fund made up of any such investments, wherever located."

Sec 5388, GC (114 Ohio Laws, 720), pro-

vides that in listing investments for taxation "the amount of the income yield of each for the calendar year next preceding the date of listing shall, excepting as otherwise provided, * * * be stated in dollars and cents and the assessment thereof shall be at the amount of such income yield."

Sec 5389, GC, (114 Ohio Laws, 721), defines "income yield" as "the aggregate amount paid as income * * * to the owner or * * * holder * * * of an investment, whether including the taxpayer or not, during such year," and that income yield in the case of equitable interests shall be "the cash distributions of income so made."

Sec 5638, GC, (114 Ohio Laws, 722), classifies intangible property and fixes the rate of taxation therefor, providing in the cases of investments producing income of "five per centum of income yield."

The plaintiff now seeks to enjoin the collection of a tax equaling five per centum of the net income received from the Pennsylvania trustee during the year 1931.

It is asserted that the tax is in effect a tax upon the corpus of the trust in Pennsylvania, wholly beyond the jurisdiction of the state of Ohio, and consequently offends against the Fourteenth Amendment of the Constitution of the United States.

Sec 5323, GC (114 Ohio Laws, 715) provides:

"The term * * * 'investments' as * * * used in this title, includes * * * the following:

"Shares of stock in corporations, associations and joint stock companies, under whatever laws organized or existing, excepting (1) those in such corporations and associations as constitute instrumentalities of the federal government for the taxation of which by the several states no provision is made by act of the congress of the United States, (2) those in financial institutions, dealers in intangibles and domestic insurance companies as defined by chapter four of this title, and (3) such as are defined in this chapter as 'deposits.'

"Interest bearing obligations for the payment of money, such as bonds, certificates of indebtedness, debentures and notes; certificates of deposit, savings and other like deposits in financial institutions outside of this state yielding income by way of interest or dividends in excess of four per centum of the principal sum withdrawable; and other similar evidences of indebtedness, whether negotiable or not, and whether or not secured by mortgage of or lien upon real or personal property or income, by whomsoever issued, excepting such as have been issued (1) by the United States or any of its territories, districts, or dependencies, or (2) by any instrumentality of the federal government, or (3) prior to the first day of January, 1913, by the state of Ohio or any political or other subdivision or school district in this state and (4) bonds of the state of Ohio issued pursuant to article VIII, §2a of the Constitution of Ohio and (5) such as are defined in this chapter as 'deposits' and 'current accounts.'

"Annuities, royalties and other contractual obligations for the periodical payment of money and all contractual and other incorporeal rights of a pecuniary nature whatsoever from which income is or may be derived, however evidenced, excepting (1) patents and copyrights and royalties derived from each, (2) interests in land and rents and royalties derived therefrom, other than equitable interests divided into shares evidenced by transferable certificates and (3) employment and partnership contracts and salaries and wages derived therefrom.

"All equitable interests, life or other limited estates and annuity interests in any investment hereinbefore described, or in any fund made up of any such investments, wherever located.

"When any corporation provides and carries out a plan for the allotment and sale of any or all of its unissued shares, or of shares purchased or to be purchased, to the employees of the corporation or to the employes of subsidiary corporations or to a trustee on their behalf, and for the payment of such shares in installments or at one time, and for the establishment of a special fund or funds in which such employees during the period of their employment or other period of time may be privileged to share on such terms and conditions as may be imposed in respect thereof; the relationship between the corporation or the trustee, if any, and each employee shall, for the purpose of determining the tax upon the shares concerned or upon any interest in them, be deemed to be a trust, and any tax upon the said shares or any interest in them shall be levied and assessed accordingly."

Sec 5388, GC (114 Ohio Laws, 720), provides:

"Excepting as herein otherwise provided, personal property shall be listed and assessed at seventy per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the

days or at the times as of which it is required to be estimated on the average basis, as the case may be. Deposits not taxed at the source shall be listed and assessed at the amount thereof in dollars on the day as of which they are required to be listed. Moneys shall be listed and assessed at the amount thereof in dollars on hand on the day as of which they are required to be listed. In listing investments, the amount of the income yield of each for the calendar year next preceding the date of listing shall, excepting as otherwise provided in this chapter, be stated in dollars and cents and the assessment thereof shall be at the amount · of such income yield; but any property defined as investments in either of the first two subparagraphs of §5323 GC which has yielded no income during such calendar year shall be listed and assessed as unproductive investments, at the true value thereof in money, on the day as of which such investments are required to be listed.

"Credits and other taxable intangibles shall be listed and assessed at the true value thereof, in money, on the day as of which the same are required to be listed.

"Personal property of the following kinds, used in business, shall be listed and assessed at fifty per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be:

"(1) All engines, machinery, tools and implements of a manufacturer mentioned in §5386 GC, and all engines and machinery of every description used, or designed to be used in mining, and all tools and implements of every kind used, or designed to be used for such purpose, excepting as provided in the last paragraph of this section, and all engines, machinery, tools, implements and domestic animals used in agriculture.

"(2) The average value of all articles purchased, received or otherwise held by a manufacturer for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying or refining; the average value of all articles which were at any time by him manufactured or changed in any way, either by combining or rectifying, or refining or adding thereto, but not including finished products unless kept or stored at the place of manufacture or at a warehouse in the same county therewith; and agricultural products on farms.

"Boilers, machinery, equipment and personal property used for the generation or distribution of electricity other than for the use of the person generating or distributing the same shall be listed and assessed at the true value thereof in money, on the day as of which they are required to be listed, anything in this section to the contrary notwithstanding."

Sec 5389 GC, (114 Ohio Laws, 721), provides:

"As used in §5388 GC and elsewhere in this chapter, the 'true value in money' of any property means the usual selling price thereof at the time or times and place as of which it is required to be listed; but if there is no usual selling price known to the person whose duty it is to fix a value thereon, then, such price as is believed could be obtained therefor in money, at such time or times and place. In the case of personal property used in business, the book value thereof, if any, less book depreciation, at such time or times, shall be listed and such depreciated book value shall be taken to be the true value of such property, unless the assessor shall find that such depreciated book value is greater or less than the then true value of such property in money. Claim for any deduction from depreciated book value must be made in writing by the taxpayer at the time of making return; and when such return is made to the county auditor and required by this chapter to be transmitted to the commission for assessment, the county auditor shall, as deputy of the commission, investigate such claim and shall enter thereon, or attach thereto, in such form as the commission may prescribe, his findings and recommendations with respect thereto; when such return is made to the commission such claim for deduction shall be referred to the auditor of each county wherein the property affected thereby is listed, as such deputy, for investigation and report.

" 'Income yield' as used in §5388 GC and elsewhere in this title means the aggregate amount paid as income by the obligor, trustee or other source of payment to the owner or owners, or holder or holders of an investment, whether including the taxpayer or not, during such year, and includes the following:

"In the case of an obligation bearing interest, the amount of interest separately charged and paid during such year, if any, exclusive of payments on the principal; in the case of shares of stock, the cash dividends so paid; in the case of annuities or

other obligations for periodical installment payments including both principal and interest, not separately charged and paid, four per centum of half of the principal used to purchase the same, or, if there be no such principal, four per centum of half of the present worth of such payments if commuted, which shall be calculated, as of the date on which such investment is required by this chapter to be first listed, with interest at four per centum per annum and, in the case of annuities for life or lives, according to the Combined Annuity Four Per Cent. Table; in the case of equitable interests, the cash distributions of income so made. At the request of the commission or of any county auditor, the superintendent of insurance shall, upon being furnished with a statement of the facts, compute upon a basis equivalent to that herein prescribed, the income yield of any investment as to which the interest is not charged and paid separately from the principal thereof, and the assessor shall be governed by the computation so made."

Sec 5638, GC (114 Ohio Laws, 722), provides:

"For the purpose of the general revenues of the municipal corporations, school districts and special taxing districts in this state, and to lessen the burden of general taxation on real property, taxes are hereby levied on the kinds and classes of intangible property, hereinafter enumerated, on the grand classified tax list and duplicate of the state of Ohio at the following rates, to-wit: investments, five per centum of income yield; unproductive investments, two mills on the dollar; deposits, two mills on the dollar; shares in and capital employed by financial institutions, two mills on the dollar; shares in and capital employed by dealers in intangibles, five mills on the dollar; capital and surplus of domestic insurance companies, five mills on the dollar; and moneys, credits and all other taxable intangibles so listed, three mills on the dollar."

The Supreme Court of the United States is the final arbiter of conflicts with the Federal Constitution, and it is contended both by plaintiff and defendants that the decisions of that court have adjudicated the questions involved; each side claiming a favorable attitude on the part of that tribunal. An extended review of the many decisions cited and bearing upon the question involved would unduly extend this opinion. It will, however, be only necessary to note a few of the more recent cases in order to develop my position upon what has been brought before the court.

The exact problem here presented has not been squarely placed before the court. The legislation involved, as worded, is unique.

The state of Ohio has definitely committed itself to the taxing of intangible property, which it defines in part to be all equitable interests, life or other limited estate in any investment, or any fund made up of investments, wherever located. Obviously, this is not a tax on income, although the income from the equitable life interest is used as the basis upon which the tax is computed at the rate of five per centum. The measure of the tax is not the definition of the tax, nor is it controlling as to its character. If such were the case, if the rate were based upon the value of the corpus, then the tax would be upon the res in the hands of the trustee. It is conceded by all counsel for the state, for plaintiff, and counsel amici curiae, that the tax under consideration is not an income tax. The result of the legislation is to impose a tax upon the income of the plaintiff, but this in itself does not change the fact that the Legislature of Ohio has definitely provided a tax upon an intangible right; a right to receive the income. To hold otherwise is judicial legislation.

It is said that the Legislature intended to pass a law imposing a tax on income. If such was the intent, it must be ascertained from a reasonable construction or interpretation of the language used. It is perfectly possible for the Legislature to intend to enact one thing and enact another.

Statutes levying taxes are not to be extended by implication beyond the clear import of the language used. United States v Field, Exr., 255 U. S., 257, 262, 41 S. Ct., 256, 65 L. Ed., 617, 18 A.L.R., 1461.

In United States v Merriam, 263 U. S., 179, 187, 188, 44 S. Ct., 69, 68 L. Ed., 240, 29 A.L.R., 1547, it is stated:

"On behalf of the Government it is urged that taxation is a practical matter and concerns itself with the substance of the thing upon which the tax is imposed rather than with legal forms or expressions. But in statutes levying taxes the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer. Gould v Gould, 245 U. S. 151, 153

(38 S. Ct. 53, 62 L. Ed. 211). The rule is stated by Lord Cairns in Partington v Attorney General, L. R. 4 H. L. 100, 122:

" 'I am not at all sure that, in a case of this kind—a fiscal case—form is not amply sufficient; because, as I understand the principle of all fiscal legislation, it is this: If the person sought to be taxed comes within the letter of the law he must be taxed, however great the hardship may appear to the judicial mind to be. On the other hand, if the Crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be. In other words, if there be admissible in any statute, what is called an equitable construction, certainly such a construction is not admissible in a taxing statute, where you can simply adhere to the words of the statute.' And see Eidman v Martinez, 184 U. S. 578, 583 (22 S. Ct. 515, 46 L. Ed. 697)."

"It is to be fairly and justly presumed that the legislature, which possesses a power so comparatively unrestrained in its force and searching in its extent as the power of taxation, has so shaped the law as, without ambiguity or doubt, to bring within it everything that it was meant should be embraced." 25 Ruling Case Law, 1092, §307.

"The court cannot attribute to the legislature an intent which is not in any way expressed in the statute." 59 Corpus Juris, 958.

Simply because the state can tax the income of the plaintiff, and the practical operation of the law is to tax the income of the plaintiff, does not justify misconstruing a very definite and plain statement by the Legislature that it is not taxing the income, but simply and solely the right in the trust estate proportioned to the amount received. When the Legislature has selected the object of taxation, courts cannot substitute an authorized subject for one excluded by constitutional inhibition, simply because the same results are obtained, or for reasons of expediency.

Such cases, therefore, as Maguire v Trefry, Tax Commr. of Massachusetts, 253 U. S., 12, 40 S. Ct., 417, 64 L. Ed., 739, and Lawrence v State Tax Commission of Mississippi, 286 U. S., 276, 52 S. Ct., 556, 76 L. Ed., 1102, are not controlling, since they refer to state laws imposing an income tax.

The case of Brooke v City of Norfolk, 277 U. S., 27, 48 S. Ct., 422, 72 L. Ed., 767, comes very close to deciding the real question presented, that is, whether the state of Ohio may tax the equitable interest of the Ohio resident plaintiff in the trust fund in Pennsylvania. The opinion in that case reads as follows:

"The petitioner applied in the local form of proceeding for the correction of two assessments for taxation alleged to be erroneous and contrary to the Fourteenth Amendment. The Court of first instance, The Corporation Court of the City of Norfolk, upheld both assessments as valid, and the Supreme Court of Appeals of Virginia rejected a petition for a writ of error on the ground that the judgment below was plainly right. A writ of certiorari was granted by this court. 274 U. S., 734 (47 S. Ct., 767, 71 L. Ed., 1335).

"The assessments complained of were for City and State taxes upon the corpus of a trust fund created by the will of a citizen of Maryland resident in Baltimore at the time of her death. This will bequeathed to the Safety Deposit and Trust Company of Baltimore eighty thousand dollars in trust to pay the income to the petitioner for life, then to her daughters for their lives, and, upon the death of the last survivor, to divide the principal between the descendants then living of the daughters per stirpes. The will was proved in Maryland and in 1914 was admitted to probate in the Corporation Court of Norfolk as a foreign will. The property held in trust has remained in Maryland and no part of it is or ever has been in Virginia.

"The petitioner has paid without question a tax upon the income received by her. But the doctrine contended for now is that the petitioner is chargeable as if she owned the whole. No doubt in the case of intangible property lying within the State and subject to a paramount lien for taxes, the occupant actually using it may be made personally liable. Illinois Central R. R. Co. v Kentucky, 218 U. S. 551, 562 (31 S. Ct., 95, 54 L. Ed., 1147). Carstairs v Cochran, 193 U. S. 10, 16 (24 S. Ct., 318, 48 L. Ed., 596). But here the property is not within the State, does not belong to the petitioner and is not within her possession or control. The assessment is a bare proposition to make the petitioner pay upon an interest to which she is a stranger. This cannot be done. See Wachovia Bank & Trust Co. v Doughton, 272 U. S. 567, 575 (47 S. Ct., 202, 71 L. Ed., 413)."

In the case of Safe Deposit & Trust Co. of Baltimore v Commonwealth of Virginia, 280 U. S., 83, 50 S. Ct., 59, 74 L. Ed., 180, 67 A.L.R., 386, a citizen of Virginia transferred a fund of stocks and bonds to a Maryland Trust Company in trust for his two minor sons. The trustee was empowered to change the investments and was to accumulate the income, first paying taxes and its own commissions, and, as each son attained the age of twenty-five years, was to pay him one-half of the principal with the income accumulated thereon. If either son died before receiving his share, his share was to be paid over to his children, if he left any; otherwise it was to be added to that of the surviving son and held for his use and benefit in the same manner as the original share of that son was held. The deed made no provision for the event of the death of both sons under twenty-five without issue. The donor reserved to himself a power of revocation, but died in Virginia without exercising it. The trust company continued to hold the original securities in Baltimore, Maryland, and paid the taxes regularly demanded by that city and the state on account of them. Administration of the donor's estate was had in Virginia, where the two sons, still in their minority, also were domiciled. The courts of Virginia sustained a Virginia tax upon the whole corpus of the trust estate by regarding the sons, in conjunction with the administrator, as the real owners of it. Held, that the tax was on property beyond the jurisdiction of the state and invalid under the Fourteenth Amendment.

The point of differentiation noted by the defendants is that in these cases the state sought to tax the corpus of the trust fund in a foreign state, and not the equitable interest of the beneficiary in the trust fund.

Were the plaintiff the legal owner of the securities, it is without question that she would be liable to a tax. But she is not the legal owner; she has no right to control their disposition or use; **her only right is a claim upon the trustee to account to her for the net yearly income.**

In the case of Safe Deposit & Trust Co. of Baltimore v Commonwealth of Virginia, supra, the beneficiaries had no right to receive the income, but they had, as is not true in the instant case, a right to ultimate distribution of the corpus of the trust fund. A reading of the entire opinion is convincing that neither of these features would be controlling.

The many inheritance tax cases, such as First National Bank of Boston, Exr., v

Maine, 284 U. S., 312, 52 S. Ct., 174, 76 L. Ed., 313, are in no way helpful, since they are predicated upon the principle that the event of succession, death, can occur in only one place, and that the domicile of the decedent, by the laws of which state the succession is made possible.

If the "equitable interest" of the plaintiff in the trust fund may be the subject of taxation in Ohio it is interesting to note that in addition to a tax upon such "equitable interest" plaintiff can also be required to pay a tax upon the "income" to Ohio, a tax through the trustee upon the res in Pennsylvania to that state, and an income tax to the federal government. While such multiple burdens of taxation can in no way be effective in deciding the legality of a tax, they certainly do not strengthen a court in a position holding valid a tax of doubtful constitutionality.

I am mindful as well that it is the duty of the court to sustain the constitutionality of legislation unless it is directly violative of higher authority. It is my conclusion that such violation has been clearly shown to exist. Stripping the whole matter of all subterfuge and fiction, the tax is manifestly a tax upon the corpus of the estate in Pennsylvania, just as much so as were the taxes imposed in the cases previously noted. That the basis of the rate is the income, while somewhat confusing at first, does not change the outstanding fact. To hold otherwise is merely to close the eyes of justice to the obvious situation that the plaintiff is being taxed in Pennsylvania, and is taxed in Ohio on the same identical property, and that she may in addition be taxed under the guise of an income tax.

To say that one is an "interest" constituting property in Ohio, and that the other is a res in Pennsylvania, is resorting to a fiction, which, while it may be necessary to secure and preserve just rights, should not be employed to produce plain evasions of the security guaranteed by the Federal Constitution.

While used by the Supreme Court in a somewhat different connection, a statement in the opinion in the case of Safe Deposit & Trust Co. of Baltimore v Commonwealth of Virginia, 280 U. S., 83, at page 94, 50 S. Ct., 59, 74 L. Ed., 180, 67 A.L.R., 386, well expresses my conclusion:

"It would be unfortunate, perhaps amazing, if a legal fiction originally invented to prevent personalty escaping just taxation should compel us to accept the irrational view that the same securities were within

two States at the same instant and because of this to uphold a double and oppressive assessment."

The state of Ohio may tax the income if it chooses so to do. It expressly disavows such intention. That which it has attempted to do, in my opinion, is violative of the Fourteenth Amendment of the Federal Constitution, and should be enjoined.