## MAYOR AND CITY COUNCIL OF BALTIMORE *v.* ANNE R. GIBBS.
[No. 120, October Term, 1933.]

*Decided February 20th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*J. Francis Ireton, Assistant City Solicitor,* with whom were *R. E. Lee Marshall, City Solicitor,* and *S. Wilmer Pleasants, Assistant City Solicitor,* on the brief, for the appellant.

*William L. Henderson, Assistant Attorney General,* with whom was *William Preston Lane, Jr., Attorney General,* on the brief, for the State Tax Commission.

*George Weems Williams* and *William L. Marbury, Jr.,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The constitutionality of a tax imposed by Baltimore City on the interest of a resident receiving income during life from intangible property held in trust in another state is contested in this case, and the facts are presented in an agreed statement. The tax has been imposed under section 8(b) of article 81 of the Code, as revised by the Act of 1929 (Code [Supp. 1929], art. 81, sec. 1 *et seq.*), chapter 226: "In case intangible personal property shall be held by any non-resident of this State in trust for any resident of this State,

the value of the interest therein of such resident of this State shall be subject to tax as if such beneficiary were the legal owner." The appellee, the beneficiary and receiver of the income, having failed to pay the tax, the city filed a suit at law to collect it, in accordance with sections 145 to 150 of the same article, and the controversy was submitted to the court sitting without a jury, upon the agreed statement and appropriate prayers for declarations of the law as contended for on one side and the other. The court in its rulings on the prayers adopted the conclusions contended for by the defendant, and verdict and judgment in her favor followed. The city appeals.

Anne R. Gibbs, a resident of Baltimore City, having become entitled to the corpus of a trust fund previously held by a trust company in Pittsburgh, Pennsylvania, and to the corpus of another, smaller fund previously held in trust in Maryland, consolidated the funds of the two estates, and in 1915 and 1920 conveyed them to the trust company in Pittsburgh, upon trust to pay her the income during her life, with remainders over, subject to a reservation to herself of a right to withdraw amounts of principal within limits. All assets of the trust are, therefore, held in Pennsylvania. They consist mainly of mortgages and mortgage certificates secured by Pennsylvania real estate, and include a comparatively small amount in bonds and cash. The total aggregate value in 1929 was estimated at $49,211.27, and in 1930 at $49,241.02. Personal property taxes on these amounts were paid by the trustee to the State of Pennsylvania, in accordance with the laws of that State. The income of the life beneficiary from the trust in 1929 was $2,587.29. For the years 1930 and 1931 the Mayor and City Council of Baltimore levied a personal property tax on the interest of the appellee valued at a five per cent. capitalization of the 1929 income, taking it as a life annuity. Given the income of $2,587.29, then by means of a figure in a table for valuing annuities according to the ages and expectancies of the annuitants, a valuation of $26,810 was reached, and the interest of the

appellee was assessed and taxed as intangible property of the value of $35,810.

There is a preliminary question whether the appellee's contest of the levy has come too late, and that question is to be answered by construction of the provisions of the general tax revision statute of 1929, chapter 226, revising and recodifying article 81 of the Code. Sections 183, 184, 186 and 188 provide a proceeding for such a contest to be initiated by the owner, by appeal, first, to the State Tax Commission, and then to the Circuit Court for the appropriate county or the Baltimore City Court, and finally to this court. And the appellant urges that failure of the appellee to avail herself of the remedy so provided must be held to foreclose all contest by her, on the principle that the State may provide one remedy for taxpayers and confine them to it. *Baltimore Steam Packet Co. v. Baltimore,* 161 Md. 9, 18, 155 A. 158; *First Nat. Bank of Greeley v. Commissioners Weld County,* 264 U. S. 450, 453, 44 S. Ct. 385, 68 L. Ed. 784; *Gorham Mfg. Co. v. State Tax Commission,* 266 U. S. 265, 45 S. Ct. 80, 69 L. Ed. 279. But, granting the force of this principle, is the owner or taxpayer so confined to the one remedy of appeal by her, under the statutes as now revised? Section 150 of the new provisions (Code, Supp. 1929) for suit by the collecting officers provides that: "In any such action the certificate of the authority charged with the collection of the tax, that is, the Comptroller of the Treasury, collector of any county and/or city, showing the amount of tax due with all penalties and interest shall be *prima facie* evidence to entitle the plaintiff to judgment for the amount of such tax, penalty and interest and shall cast upon the defendant the burden of proving that the assessment was not legally made or that the tax has been paid or any other sufficient defense." And the defendant has contended that the general statement of a burden to be met by "any other sufficient defense" must be intended to afford the owner of property taxed a second opportunity for raising a constitutional objection. With that contention this court agrees, because defense on invalidity not

concerned with procedure in the assessment or making of the tax would seem to refer necessarily to a violation of some constitutional or statutory limitation. No construction which would exclude defense on that ground appears to be permissible. *Baltimore v. Home Credit Co.*, 165 Md. 57, 167 A. 552.

The constitutional objections are that the Fourteenth Amendment of the United States Constitution is violated by a denial of due process of law in double taxation by the two states of the same property, and a denial of equal protection of the laws in an imposition of the tax on the interest of a life beneficiary when the trust fund is held in another state, but not when it is held in the same state.

On the objection that there is double taxation by the states of the same intangible property, the court has been referred to the several relevant decisions of the United States Supreme Court. *Maguire v. Trefry*, 152 U. S. 12, 40 S. Ct. 417, 64 L. Ed. 739; *Brooke v. Norfolk*, 277 U. S. 27, 48 S. Ct. 422, 72 L. Ed. 767; *Safe Deposit & Trust Co. v. Virginia*, 280 U. S. 83, 50 S. Ct. 59, 74 L. Ed. 180; *Farmers' Loan & Trust Co. v. Minnesota*, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371; *Baldwin v. Missouri*, 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056; *Beidler v. South Carolina Tax Commission*, 282 U. S. 1, 51 S. Ct. 54, 75 L. Ed. 131; *Lawrence v. State Tax Commission*, 286 U. S. 276, 52 S. Ct. 556, 76 L. Ed. 1102; and *Burnet v. Brooks*, U. S. 378, 53 S. Ct. 457, 77 L. Ed. 844. And the decision of this court must, of course, be controlled by the determinations of that court so far as they have gone. The State Tax Commission, in a reasoned opinion quoted by counsel in this case, although conceding the jurisdiction of the state of the situs to levy such a tax, inferred that double taxation of corpus of intangibles had never been held to violate the Fourteenth Amendment, and concluded that it could not be so held because of some consequences that could not be accepted, such as prevention of the taxation of mortgages or bonds held within the state and secured by property outside the state, or of shares of stock held by residents in foreign corpora-

tions the property of which is out of the state. But it is the understanding of this court that the Supreme Court has now definitely deduced from the Fourteenth Amendment what it has described as a "rule of immunity from taxation by more than one state," for intangibles as well as for tangibles. "The rule of immunity from taxation by more than one state, deducible from the decisions in respect of these various and distinct kinds of property, is broader than the applications thus far made of it." *First Nat. Bank v. Maine*, 284 U. S. 312, 326, 52 S. Ct. 174, 176, 76 L. Ed. 313. "These decisions established that proper regard for the relation of the states in our system required that the property under consideration should be taxed in only one state, and that jurisdiction to tax was restricted accordingly. In *Farmers' Loan & Trust Company v. Minnesota, supra,* the court applied the principle to intangibles, and, referring to the contrary view which had prevailed, said (page 209 of 280 U. S., 50 S. Ct. 98, 99, 74 L. Ed. 371: 'The inevitable tendency of that view is to disturb good relations among the states and produce the kind of discontent expected to subside after establishment of the Union. *The Federalist, No. VII.* The practical effect of it has been bad; perhaps two-thirds of the states have endeavored to avoid the evil by resort to reciprocal exemption laws.' It was this 'rule of immunity from taxation by more than one state,' deducible from the decisions in respect of various and distinct kinds of property, that the court applied in *First National Bank v. Maine, supra,* page 326 of 284 U. S.. As pointed out in the opinion in the *First National Bank* case, the principle has had a progressive application." *Burnet v. Brooks,* 288 U. S. 378, 401, 53 S. Ct. 457, 463, 77 L. Ed. 844. And see notes, 30 *Columbia Law Rev.* 539; 40 *Yale Law Journal*, 99; 37 *West Virginia Law Quarterly*, 115. It may be that it is not a rule to be given universal application, such as to prevent taxation of mortgages or bonds, or shares of stock, which represent interests in property in other states; but whether it is or is not so to be applied, the ruling of the Supreme Court

in cases of taxation of corpus of a trust of intangibles in another state seems too plain to be affected by that consequence. Taxation of the same property in the state where it is held as corpus, and also in the state where the beneficiary resides, is unconstitutional.

This leaves a question whether the same property is taxed in this instance. Is the taxation of the beneficiary's right to income, or her life estate, by the process of capitalization adopted, to be distinguished from taxation of the corpus in Pennsylvania? It is the distinction on which the tax is sought to be upheld. We are cautioned that in passing on the constitutionality of a tax the courts are to be "concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it." *Lawrence v. State Tax Commission,* 286 U. S. 280, 52 S. Ct. 556, 557, 76 L. Ed. 1102. "And, certainly, existing conditions no less imperatively demand protection of choses in action against multiplied taxation whether following misapplication of some legal fiction or conflicting theories concerning the sovereign's right to exact contributions." *Farmers' Loan & Trust Co. v. Minnesota,* 280 U. S. 204, 211, 50 S. Ct. 98, 100, 74 L. Ed. 371.

So far as we are informed, taxation of the interests of beneficiaries in trust property in other states has been upheld only when the taxes have been confined to the income actually brought within the jurisdictions of the beneficiaries. In the leading case of *Maguire v. Trefry,* 253 U. S. 12, 40 S. Ct. 417, 419, 64 L. Ed. 739, the court, upholding such a tax on income received by a Massachusetts beneficiary from property held in trust in Pennsylvania, remarked that: "It is true that the legal title of the property is held by the trustee in Pennsylvania. But it is so held for the benefit of the beneficiary of the trust, and such beneficiary has an equitable right, title and interest distinct from its legal ownership. * * * It is this property right belonging to the beneficiary, realized in the shape of income, which is the subject-matter of the tax under the statute of Massachusetts." The lan-

guage can rightly be applied, we think, only to the beneficiary's interest in income, the property under consideration as the object of the tax, or as the interest subject to taxation. In a recent Ohio case, *Rowe v. Braden,* 126 Ohio St. 533, 186 N. E. 392, 395, affirming the decision in 44 Ohio App. 397, 186 N. E. 20, these decisions of the United States Supreme Court were construed to uphold a tax so confined to the income received by beneficiaries in Ohio, a tax equaling five per centum of the net income received from a Pennsylvania trustee during the year 1931. "Under whatever name the tax is designated," said the majority of the court, "both in the case under consideration and the controlling case of *Macguire v. Trefry, Tax Commissioner, supra,* all that was sought to be taxed was the equitable property interest, represented by income derived from the trust." In no cases cited, and no cases found by us, have the courts had before them a tax on a capitalized value of the income; the final question before us seems to be one on which there is no authority.

This court agrees with the trial court in the conclusion that the tax so levied cannot be distinguished from the tax on corpus held unconstitutional in the case of *Safe Deposit & Trust Co. v. Virginia, supra.* Either income or principal must be the subject of the tax. There is no third or middle ground for taxation between the two, and the process adopted for valuing the appellant's interest is plainly one for reconverting the income to a share in ownership of the principal. It is, in fact, a process sometimes used to ascertain the values of life estates for partitioning property between life tenants and remaindermen, as a substitute and full equivalent in principle for the older method of dividing the ownership into fractions to ascertain the shares of either the ordinary life tenants or of widows entitled to dower. "There is no difference between a tenant in dower and any other tenant for life, except one is entitled to no more than a third and the other is entitled to the whole for life." *Williams' Case,* 3 Bland, 186, 282; and see Brantly's note to that case, and note 137 *Am. St. Rep.* 663.

According to the view taken in levying the tax, this analysis would carry a mere fiction too far. The argument is, in effect, that there has been no real capitalization and tax on the corpus of the trust fund, but merely a valuation by the process of a right to a life income; ascertaining the price or value of a life annuity. But when the annuity is a charge upon, or is the enjoyment of a life estate in, a specific fund, the right to it is a part of the total property in that fund, and its capitalized value is the equivalent, in the corpus, of so much income. 1 *Pomeroy, Equity Jur.*, secs. 147 and 148; *Evans v. Iglehart*, 6 G. & J. 171. And on annuities, see 2 *Blackstone, Comm.* 20; *Cahill v. Md. Life Ins. Co.*, 90 Md. 333, 45 A. 180; *Jones v. Stockett*, 2 Bland, 409; *Mitchell v. Mitchell*, 2 Gill, 230; *Perkins v. Emory*, 55 Md. 27. The annuitant's interest in this instance is as much a part of the total property ownership as would be a life tenant's interest in a house in which she lived, the difference being only one of mode of enjoyment of the one trust property and the other.

Taking the tax, then, to be one on the principal of the property, or on part of the total of rights which constitute the property, it seems to differ from the tax levied on the whole corpus, which in *Safe Deposit & Trust Co. v. Virginia* was held unconstitutional, only as a part differs from the whole. No legal distinction can be drawn, we think, between taxing the whole corpus because of the benefit received by the resident from it, and taxing so much of it as represents her share in it upon a capitalization of her income. The whole value, including every part of the rights in it, is taxed at the site, and taxation in Maryland on the basis of a share in the principal would seem to be double taxation. For these reasons the court is of opinion, as stated, that the present tax is unconstitutional.

Having come to this conclusion, the court need not discuss the objection that equal protection of the laws has been denied.

*Judgment affirmed, with costs.*