Commonwealth, Appellant, *v.* Stewart.

10

Argued January 24, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*E. Russell Shockley,* Deputy Attorney General, with him *W. Edward Greenwood,* and *Claude T. Reno,* Attorney General, for appellant.

*Charles I. Thompson,* with him *Howard F. Troutman, William R. Spofford,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

*Wm. A. Schnader,* amicus curiæ, under Rule 61.

OPINION BY MR. JUSTICE STERN, March 25, 1940:

The question is whether the equitable life interest of a resident of Pennsylvania in a trust fund created by a resident of New York, the trustees also being residents of that state and the trust res consisting of stocks and bonds registered in the names of the trustees and kept in New York, is taxable in Pennsylvania under the Act of June 22, 1935, P. L. 414, as amended by the Act of July 17, 1936, P. L. 51; and, if so, whether the statute, as thus applied, is unconstitutional as violating the provisions of the Federal and State Constitutions which forbid the deprivation of property without due process

of law or the provision of the State Constitution which requires uniformity of taxation.

The State Personal Property Tax Act of June 22, 1935, P. L. 414, section 3, as amended by the Act of July 17, 1936, P. L. 51, provides: "All personal property of the classes hereinafter enumerated, owned, held or possessed by any resident, whether such personal property be owned, held or possessed by such resident in his own right, or as active trustee, agent, attorney-in-fact, or in any other capacity for the use, benefit or advantage of any other person, . . . and the equitable interest in any such personal property of the classes hereinafter enumerated [these classes including the securities here involved], owned, held or possessed by any resident, where the legal title to such personal property is vested in a trustee, agent, or attorney-in-fact domiciled in another state, and where such resident is entitled to receive all or any part of the income therefrom, is hereby made taxable, annually, for State purposes, at the rate of four mills on each dollar of the value thereof. . . . The value of the equitable interest in any personal property, made subject to tax by this section, shall be measured by ascertaining the value of the personal property in which such resident has the sole equitable interest, or in case of divided equitable interests in the same personal property, then by ascertaining such part of the value of the whole of such personal property as represents the equitable interest of such resident therein."[1]

In 1917 and 1926 Mary W. Harriman, a resident of the State of New York, executed deeds of trust assigning and transferring to a trust company in New York and two individual residents of New York certain bonds and stocks in trust "for the sole and exclusive use and benefit of Carol A. Harriman [who was the daughter of

---

[1] The Act of June 22, 1935, P. L. 414, was re-enacted, with amendments not here material, by the Acts of May 18, 1937, P. L. 633, and May 5, 1939, P. L. 76.

the grantor and is referred to in the second deed as Carol Harriman Smith] during her natural life." The trustees were to invest and reinvest the securities in their discretion and to pay the net income to Carol A. Harriman (Carol Harriman Smith) during her life, the property at her death to be transferred and delivered to her surviving children and the issue of deceased children, or, if there were no such children or issue, to the other children of the grantor and their issue. The securities at all times have been kept in a safe deposit box in the vaults of the trust company in New York. The life beneficiary (by re-marriage Carol Harriman Stewart) is now a resident of the State of Pennsylvania. In a rider to her State personal property tax return for the year 1937 she stated: "The taxpayer's valuation of the securities held in said trust, based upon her present age of 47 years, is $1,899,506. The taxpayer received an income from said securities in the year 1936 of $140,088.29." In the same rider, however, she claimed that her equitable interest was not taxable. The valuation thus fixed by her was 53.9% of the market value of the securities on January 1, 1937. After some intermediate proceedings of no present significance, the Department of Revenue accepted the taxpayer's valuation and assessed the tax thereon, including interest, at $8,148.88. An appeal by the taxpayer to the Court of Common Pleas of Chester County was sustained, from which judgment the Commonwealth now appeals to this court.

The tax levied by the Act of 1935 as amended is on personal property and on equitable interests therein. It must first be determined, therefore, whether appellee's right to the income of the trust for life constitutes an equitable interest in personal property. For many years academic authorities, in learned articles, have argued the question of the real nature of a beneficiary's interest in a trust,—among them Maitland, Holdsworth, Ames, Langdell, Pound, Scott, and Stone (now Mr. Justice

Stone of the Supreme Court of the United States). According to the one school, the rights of the beneficiary are merely in personam, that is, only against the trustee and without any property right in the trust res itself, a mere chose in action. This view undoubtedly represents the early juridical conception of the status of a cestui que trust. But the modern trend of equity jurisprudence has inclined toward the doctrine that, in addition to rights against the trustee, the beneficiary also has rights in rem, an actual property interest in the subject-matter of the trust, an equitable ownership of the trust res.[2]

Whatever may be the consensus of opinion of writers on this branch of the law, in the actual decisional field the prevailing, if not unanimous ruling, both in England and in this country, adheres to the theory that the equitable beneficiary has an interest or estate in the property constituting the trust fund. "Whatever may have been the earlier view of the subject . . . the modern cases do not treat the relation between trustee and cestui que trust as contractual. . . . A proceeding by the beneficiary or his assignee for the enforcement of rights in and to the property . . . could not be treated as a suit on a contract, or as a suit for the recovery of the contents of a chose in action, or as a suit on a chose in action": *Brown v. Fletcher*, 235 U. S. 589, 598, 599. In *Irwin v. Gavit*, 268 U. S. 161, 167, the court said: "The courts below went on the ground that the gift to the plaintiff was a bequest and carried no interest in the corpus of the fund. We do not regard those considerations as conclusive, . . . but if it were material a gift of the income of a fund ordinarily is treated by equity as creating an interest in the fund. Apart from techni-

---

[2] For comprehensive discussions of this subject see: 1 Scott on Trusts, section 130; Stone on The Nature of the Rights of the Cestui Que Trust, 17 Columbia Law Review 467; 1 Bogart, "Trusts and Trustees," section 183. In some states the subject is regulated by statute in the case of trusts in *real* property.

calities we can perceive no distinction relevant to the question before us between a gift of the fund for life and a gift of the income from it. The fund is appropriated to the production of the same result whichever form the gift takes." In *Senior v. Braden,* 295 U. S. 422, 430-433, it was said: "The State [appellee] maintains that . . . the rights of the beneficiary consist merely of claims against the various trustees to the pro rata distribution of income, during the continuance of the trusts, and to the pro rata distribution of the proceeds of a sale of the trust assets upon their termination. Appellant submits that ownership of the trust certificate is evidence of his interest in the land, legal title to which the trustee holds. . . . Apparently no opinion of any court definitely accepts the theory now advanced by appellees, but some writers do give it approval because of supposed consonance with general legal principles. . . . In *Brown v. Fletcher,* 235 U. S. 589, 597, 599, we had occasion to consider the claim that a beneficial interest in a trust estate amounts to a chose in action and is not an interest in the res, subject of the trust. . . . The doctrine of Brown v. Fletcher is adequately supported by courts and writers. . . . We find no reason for departing from it." In *Blair v. Commissioner of Internal Revenue,* 300 U. S. 5, 13, it was said by the Chief Justice: "The will creating the trust entitled the petitioner during his life to the net income of the property held in trust. He thus became the owner of an equitable interest in the corpus of the property. . . . By virtue of that interest he was entitled to enforce the trust, to have a breach of trust enjoined and to obtain redress in case of breach. The interest was present property alienable like any other, in the absence of a valid restraint upon alienation. . . . The assignment of the beneficial interest is not the assignment of a chose in action but of the 'right, title and estate in and to property.' "

Without undertaking to collate authorities from state jurisdictions, we have in our own state some indication that Pennsylvania is in accord with these views. In *Commonwealth v. Lehigh Valley Railroad Co.*, 129 Pa. 429, in applying an act of 1885 which provided that all mortgages, etc., owned or possessed by any person, and all other moneyed capital in the hands of individual citizens of the state, should be taxable for state purposes, this court said (pp. 452, 453): "As the Act of 1846, which authorized the assessment of such securities, when held in trust in the name of the trustee of the legal owner, is no longer in force, we can see no reason why the assessment should not be made in the name of the beneficial owner. Whilst the cestui que trust of the bonds in question may not 'possess' them, he may in some sense be said to own them. . . . We are of opinion that the bonds of the Lehigh Valley Railroad Company, held in trust by corporations, were properly taxable, not in the name of the corporations holding them, perhaps, but in the name of the beneficial owners thereof. If this were not so, the holders of corporate bonds would have it in their power, at their pleasure, by a mere transfer and deposit in trust for their own use, or the use of another, to place their bonds outside of the operation of this act, and by a mere device or shabby trick to evade the payment of a state tax thereon. There is neither reason nor authority to support such a proposition; it is absurd to suppose the legislature could have so intended."

The fact that appellee has only a right to the income from the trust for life, and not a greater interest, as, for example, an estate in remainder or a power of appointment of the corpus, obviously goes merely to the quantum of her equitable estate in the trust res and not to the existence of such an estate.

We find no difficulty in arriving at the conclusion that the Act of 1935 as amended by the Act of 1936 was intended to include and does include, by the phrase "the equitable interest in any such personal property," such

an estate as that enjoyed by appellee in the fund created by her mother, and that that estate is taxable under these statutes. It may be added that the law of the State of New York in this regard is immaterial, because the question is not what that state may consider to be an "equitable interest in personal property" but what, by the use of that phrase in our statutes, was intended to be taxed: *Morgan, Executor, v. Commissioner of Internal Revenue,* Supreme Court of the United States, opinion handed down January 29, 1940.

Are the Acts of 1935 and 1936, as thus construed, unconstitutional in their application to the present case?

It is urged by appellee that the trust funds have their situs in New York, are taxable[3] there in the possession of the trustee, and are beyond the jurisdictional taxing power of the State of Pennsylvania. This argument loses sight of principles of constitutional law which in our opinion are firmly established, namely, that the existence of different forms of ownership interests in intangible personal property may make such intangibles amenable to taxation by more than one sovereignty, and that "double taxation," that is, taxation of such different ownerships in the same property, even though in part overlapping, is not in itself a violation of the due process clause of the Fourteenth Amendment.[4] In the present instance the State of Pennsylvania is not levying a tax upon the same subject of taxation as the State of New York might do, but only upon the equitable interest of appellee in the intangibles of which the legal ownership is in the trustees. While the doctrine of *mobilia sequuntur personam* no longer applies to tan-

---

[3] It does not appear that New York actually imposes any tax upon the trust funds.

[4] Taxation of different interests in the same property within the *same* state is not unfamiliar, as, e. g., the taxation to the owner of real estate on the basis of its full, unencumbered value, and to a mortgagee of such real estate on the basis of the value or amount of the mortgage.

gibles, these, like land, having their tax situs in the jurisdiction in which they are physically located, (*Union Refrigerator Transit Co. v. Kentucky,* 199 U. S. 194; *Frick v. Pennsylvania,* 268 U. S. 473; *Curry v. McCanless,* 307 U. S. 357, 363, 364, 365), in the case of intangibles the ancient doctrine still remains,[5] because of obvious differences, theoretical and practical, between them and tangible chattels: *Union Refrigerator Transit Co. v. Kentucky,* supra, 205; *Fidelity & Columbia Trust Co. v. Louisville,* 245 U. S. 54, 58, 59; *Frick v. Pennsylvania,* supra, 494; *Blodgett v. Silberman,* 277 U. S. 1, 9, 10, 17; *Farmers Loan & Trust Co. v. Minnesota,* 280 U. S. 204; *Curry v. McCanless,* supra, 365, 366, 367. By virtue of that doctrine the situs of the equitable interest of appellee in the trust intangibles is that of her domicile; her estate therein is property *in Pennsylvania* and therefore subject to the taxing jurisdiction of this state. The right of Pennsylvania to tax property which, in the view of the law, is within its jurisdiction, cannot be denied or impaired because another state also may have the right to tax one of its own residents who enjoys another kind of ownership in the funds constituting the trust res.

It may not be amiss to repeat, because of its importance in the determination of the issue here involved, that Pennsylvania is not seeking to impose a tax upon the entire corpus of the trust fund, that is, upon the value of the securities which constitute it, but only upon the value of such interest in the property as is subject to its taxing jurisdiction, namely, the equitable interest of appellee in the fund. This clearly appears from the fact that the market value of the res is almost twice that of the assessed value of appellee's interest therein

---

[5] Intangibles can sometimes develop a localized or "business" situs in a state other than the domicile of their owner by becoming integral parts of a local business activity. The present case, however, is not concerned with that principle: See *Maguire v. Trefry,* 253 U. S. 12, 16.

as determined by herself on the basis of her age and consequent life expectancy. The Act of 1936 expressly provides that the value of the equitable interest in any personal property is to be measured by ascertaining such part of the value of the whole of the property as represents the equitable interest of the Pennsylvania resident therein, showing that the legislature had in mind that its right to tax trust funds was limited to the property right enjoyed by the Pennsylvania taxpayer in those funds. That it may be difficult to make such valuation under some hypothetical circumstances does not affect the validity of the tax. A similar difficulty arising under section 3 of the Act of June 20, 1919, P. L. 521, imposing inheritance taxes, was met by an administrative solution approved by this court: See *Rowell's Estate*, 315 Pa. 181, 187.

According to our interpretation of the opinions of the Supreme Court of the United States, the State of Pennsylvania has jurisdiction to impose the tax here in question, and appellee is not being deprived of property without due process of law within the intendment of either the State or the Federal Constitution.

In *Bullen v. Wisconsin*, 240 U. S. 625, a resident of one state deeded to a resident of another state, as trustee for certain beneficiaries, personal property consisting of stocks and bonds which were placed in the possession of the non-resident trustee. It was held that there was no unconstitutional deprivation of property by reason of the fact that each state, on the death of the donor, imposed an inheritance tax upon the trust fund.

In *Fidelity & Columbia Trust Co. v. Louisville*, 245 U. S. 54, where a person domiciled in Kentucky carried on a business in Missouri and maintained deposits there in a bank, it was held that the State of Kentucky could tax the deposits and so also could the State of Missouri, and that the liability to taxation in the one state did not necessarily exclude such liability in the other.

In *Cream of Wheat Co. v. County of Grand Forks,* 253 U. S. 325, it was held that the limitation of the Fourteenth Amendment upon the power of a state to tax property of its residents which had a permanent situs outside the state did not apply to intangible property even though it had acquired a business situs and was taxable in another state. The court said (p. 330) : "The Fourteenth Amendment does not prohibit double taxation."

In *Brooke v. City of Norfolk,* 277 U. S. 27, a case relied upon by appellee, city and state taxes were levied upon a resident of Norfolk, Virginia, the assessments being upon the *entire corpus* of a trust fund which was created in Maryland, and the trustee and trust securities of which were located there. This case does not have the significance in relation to the present case which appellee would ascribe to it, because there, although the taxpayer was entitled only to the income of the trust for life, the doctrine contended for was, as the court stated (pp. 28, 29) that "the petitioner is chargeable *as if she owned the whole.* . . . The assessment is a bare proposition to make the petitioner pay upon an interest to which she is a stranger. This cannot be done." (Italics supplied.)

In *Safe Deposit & Trust Co. of Baltimore v. Virginia,* 280 U. S. 83, there was similarly an attempt to impose a tax on equitable beneficiaries in Virginia upon the *whole corpus* of a trust estate consisting of intangibles in the possession of a Maryland trustee. The court said (p. 92) : "The power of Virginia to lay a tax upon the fair value of *any interest in the securities actually owned* by one of her resident citizens is not now presented for consideration." (Italics supplied). This point was emphasized in the concurring opinion of Mr. Justice STONE (p. 95) : "The question whether the Fourteenth Amendment forbids a tax on the beneficiaries in Virginia, where they are domiciled, *measured by their equitable interests,* seems to me not to be presented by the record. . . .

No attempt was made by Virginia to tax the equitable interests of the beneficiaries of the trust. . . . In fact, the securities seem to have been assessed at their full value although the equitable interests of the beneficiaries are less than the whole." (Italics supplied.)

In *Senior v. Braden,* 295 U. S. 422, where a tax was imposed by the State of Ohio upon one of its residents owning certificates which evidenced his equitable interest in a trust of parcels of land, some of which were situated outside of the state, it was held that the tax was unconstitutional, but only on the theory that the beneficial interest of the taxpayer was an estate in the land itself, and it was beyond the power of the state to tax land situated beyond its borders.[6] This case, therefore, has no relevance to that of a trust fund consisting of intangibles.

Any remaining doubt as to whether the Fourteenth Amendment prohibits two states from both taxing ownership interests of their respective residents in the same intangibles has been dispelled by the recent cases of *Curry v. McCanless,* 307 U. S. 357, and *Graves v. Elliott,* 307 U. S. 383.[7] In Curry v. McCanless it was held that two states might each constitutionally impose death

---

[6] A distinction must be borne in mind between a tax on an equitable interest in property from which income is derived, this being in effect a tax on the *right* to the income, and a mere income tax, that is, a tax on the *receipt* of the income. Thus the ruling in *Senior v. Braden,* supra, was not applied where the tax was imposed on the income of a resident even though derived from land situated in another state: *New York ex rel. Cohn v. Graves,* 300 U. S. 308.

[7] In *Newark Fire Insurance Co. v. State Board of Tax Appeals,* 307 U. S. 313, four members of the court were of the opinion that although intangibles might have acquired a business situs in another state, the corporation which owned them could be taxed in respect to them in the state of its domicile; four of the justices found it unnecessary to discuss this point because they did not think that under the facts of the case it had been established that the intangibles had acquired a business situs in the other state.

taxes upon the transfer of an interest in intangibles held in trust by a trustee in one of the states but passing under the will of a beneficiary decedent domiciled in the other. The court said (pp. 367, 368, 369, 372, 373): "When the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains. . . . There are many circumstances in which more than one state may have jurisdiction to impose a tax and measure it by some or all of the taxpayer's intangibles. . . . She [testatrix] . . . created two sets of legal relationships resulting in distinct intangible rights, the one embodied in the legal ownership by the Alabama trustee of the intangibles, the other embodied in the equitable right of the decedent to control the action of the trustee with respect to the trust property and to compel it to pay over to her the income during her life, and in her power to dispose of the property at death. . . . In effecting her purposes, the testatrix brought some of the legal interests which she created within the control of one state by selecting a trustee there and others within the control of the other state by making her domicile there. . . . We find it impossible to say that taxation of intangibles can be reduced in every case to the mere mechanical operation of locating at a single place, and there taxing, every legal interest growing out of all the complex legal relationships which may be entered into between persons." The case of Graves v. Elliott is substantially to the same effect. Appellee attempts to distinguish these cases on the ground that the taxes were transfer and not property taxes, but as was said in *Rhode Island Hospital Trust Co. v. Doughton,* 270 U. S. 69, 80, 81: "The tax here is not upon property, but upon the right of succession to property, but the principle that

the subject to be taxed must be within the jurisdiction of the State applies as well in the case of a transfer tax as in that of a property tax. A State has no power to tax the devolution of the property of a non-resident unless it has jurisdiction of the property devolved or transferred." See also *Farmers Loan & Trust Co. v. Minnesota,* 280 U. S. 204, 210.

Appellee lays stress upon the case of *Mayor and City Council of Baltimore v. Gibbs,* 166 Md. 364, 171 Atl. 37 (certiorari denied by the Supreme Court, 293 U. S. 559), where the equitable life interest of a Maryland beneficiary of a trust fund of intangibles in Pennsylvania was held to be immune from taxation in Maryland. This decision, however, was based upon the assumption, later definitely repudiated, as we have seen, by the Supreme Court of the United States, that the "double taxation" of intangibles is unconstitutional. Moreover, in that case the value of the beneficiary's interest was subjected to a tax "as if such beneficiary were the legal owner," instead of only on the extent of her interest in the trust fund.

We find no substantial merit in the contention that the tax imposed by the Acts of 1935 and 1936 lacks the uniformity demanded by Article IX, section 1, of the Constitution. All that the Constitution requires is, not that there be no classification of the subjects of taxation, but that it be based upon some valid reason: *Commonwealth v. Alden Coal Co.,* 251 Pa. 134, 139, 140; *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 432. It is argued that the tax here is invalid because only the equitable interest is taxed if the trustee is a non-resident, whereas, in the case of a resident trustee, the entire corpus is taxed. In both cases, however, the tax is assessed on the value of the property taxable in Pennsylvania. Less than such a base of taxation the State need not, more it constitutionally cannot, adopt. A classification can scarcely be said to be unreasonable when compelled

by constitutional limitations: see *Fidelity-Philadelphia Trust Co. v. Hines,* 337 Pa. 48, 57. The fact that in the one case there may be, or actually is, a tax imposed by another sovereignty which reduces the productivity of the trust fund to the beneficiary in this state has no bearing upon the question of the uniformity of our own tax laws.

It is further argued that the tax lacks uniformity because it applies only to such equitable beneficiaries as are entitled to receive all or any part of the income from the trust. The right to receive income, however, is the most valuable and distinctive attribute of ownership, and there is no reason why the state, in imposing a tax, may not segregate those having a right to income from the property and those not having such a right. While the State Personal Property Tax Act *expressly* limits the taxation of an *equitable* interest to cases where the owner thereof is entitled to receive income from the trust, the same limitation would seem to be implicit in the ordinary case of *legal* ownership of personal property, although, of course, if the right to receive income exists, the property is taxable whether income is actually received or not.

In conclusion it may be said that appellee, as a resident of Pennsylvania, is afforded protection by our state in common with all its other citizens, and her property resources (excepting, because of constitutional requirements, land and tangibles beyond its borders) should be subject to the taxing power of the state which affords her the personal security that enables her to enjoy those resources.

Judgment reversed and the record remitted to the court below with instructions to enter judgment in favor of the Commonwealth and against appellee in the amount of the additional assessment of $8,148.88, with interest thereon at the rate of six per cent per annum from the date when such assessment was payable according to law.

DISSENTING OPINION BY MR. JUSTICE DREW:

The application of the tax to appellee is unconstitutional as an attempt to reach property not within the territorial jurisdiction of this state. The trust property is effectively localized in New York. Unlike the beneficiaries involved in the inheritance tax cases of *Curry v. McCanless*, 307 U. S. 357, and *Graves v. Elliott*, 307 U. S. 383, appellee possesses absolutely no power of disposition over the corpus, nor does she enjoy a single thread of control which in the eyes of the law would operate to transport the situs of the property to her domicile and thereby confer jurisdiction upon this state to levy a property tax. She merely has the bare right to receive, during her lifetime, the income which the trustees collect in New York. It is fundamental that it is violative of due process for a state to levy a property tax upon property situated elsewhere: *Safe Deposit and Trust Company of Baltimore v. Commonwealth of Virginia*, 280 U. S. 83; *Commonwealth v. Madden's Ex'r.*, 265 Ky. 684; see *Senior v. Braden*, 295 U. S. 422. If the state wishes to effectively tax appellee for the benefits flowing from its protection of her receipt of income, an income tax provides the method: see *New York ex rel. Cohn v. Graves*, 300 U. S. 308, 312.

Moreover, the tax is only nominally limited to the actual worth of appellee's equitable interest. In practical effect, it is a tax on the value of the corpus. By its very terms the value of the equitable interest is "measured by ascertaining the value of the personal property in which such resident has the sole equitable interest, or in case of divided equitable interests in the same personal property, then by ascertaining such part of the value of the whole of *such* personal property as represents the equitable interest of such resident therein." (Italics ours). Without further legislative authority, the Department of Revenue assessed appellee by capitalizing the income which she received from the trust during the year 1936 according to her life expectancy.

The resulting figure represented 53.9% of the market value of the securities constituting the corpus. Either income or principal must be the subject of the tax. There is no third or middle ground for taxation between the two. While it is true, as stated in the majority opinion, some doubt may have been cast upon the soundness of *Mayor and City Council of Baltimore v. Gibbs,* 166 Md. 364; certiorari denied, 293 U. S. 559, in so far as it forbids multiple taxation, nevertheless, the proposition contained therein (pp. 371, 372), that the process adopted in the instant case of taxing appellee on the capitalized value of her income is equivalent to a tax on a part of the corpus, has never been repudiated.

For the foregoing reasons, I believe the application of the tax to appellee is at war with the clear mandate of the Fourteenth Amendment, as well as the guaranty of due process which is embedded in our own State Constitution: *Brooke v. City of Norfolk,* 277 U. S. 27; followed in *Craine v. Commonwealth of Virginia,* 278 U. S. 562; *Commonwealth of Virginia v. Appalachian Electric Power Company,* 159 Va. 462; certiorari denied, 288 U. S. 613. I would affirm the judgment given below.

Mr. Chief Justice SCHAFFER joins in this dissent.