WASENA HOUSING CORP. *v.* JOHN J. LEVAY, ET AL.

[No. 106, October Term, 1946.]

384

*Decided May 14, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Samuel K. Dennis* and *M. Hampton Magruder* for the appellant.

*Roszel C. Thomsen,* with whom was *Benjamin Michaelson* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellant in this case brought an action at law for the refund of taxes "erroneously or mistakenly paid." A demurrer to the declaration, as particularized, was sustained, and judgment of *non pros.* was entered.

The declaration, as particularized, alleges in substance: In Anne Arundel County the "date of finality," that is to say, "the date as of which taxes are to be levied for the taxable year in question and upon which assessments become final for such year, subject only to correction as herein authorized." (Art. 81, sec. 2(2) ; *cf.* secs. 11 and 26(b)) was, for the year 1944, October 1, 1943. On and before October 1, 1943, plaintiff owned a "subdivided tract of land" known as "Arundel Village," which was then assessed for taxation "as acreage" and on which 341 houses were under construction by plaintiff. None of the 341 houses were substantially completed on October 1, 1943. The Board of County Commissioners

(defendant) valued and assessed and put on the assessment books for taxation for 1944, the 341 houses at $2,750 each "without giving any previous notice to the plaintiff, and prior to October 1, 1943, * * *, of its purpose and intention to do so," and without notice "changed from acreage to lots" and valued and assessed the 341 lots at $260 for each outside lot and $160 for each inside lot. On October 27, 1943, the Board mailed to plaintiff, care of James C. Robertson, its vice-president, a notice "that you have been assessed for the year 1944 for purposes of taxation on the following property at the amount indicated. By attached list which has been agreed upon by Mr. Robertson. Any complaint against this assessment shall by made to the County Commissioners of Anne Arundel County on the ———— day of ———— between 10 a. m. and 2 p. m. After this date the assessment becomes final." Robertson agreed with the Supervisor of Assessments of the county, not with the Board, "to this effect only, that the sum of $2,750, valuation and assessment for each and all of said houses, and the valuation and assessment of each of said outside lots of $260 each, and said inside lots at $160 each for the purpose aforesaid, would be acceptable, if and when it was right and proper to so value and assess the same." On February 15, 1944, the then Treasurer (now deceased) sent plaintiff tax bills calling for payment of 1944 taxes on the lots and houses so valued and demanding payment thereof, and subsequently collected all of these taxes, aggregating $22,181.65. On March 25, 1944, plaintiff, by Robertson, its vice-president, wrote the Board stating that it had "instructed the Title Company to pay" these taxes, that they were "being paid under protest and without prejudice to our right to seek such means of relief as seem expedient. This position is in view of the fact that we were assessed for the full amount on all houses for the full year, whereas a great many of the houses were not completed—in fact, many of them are still not completed although practically three months of the year have passed." On January 15, 1946, plaintiff filed its claim

for refund with the Board, which marked it approved as to form only. On March 12, 1946, plaintiff presented the claim to defendant Treasurer, who in writing rejected it. Plaintiff sues for $22,181.65 and interest from date of payment.

Plaintiff contends (1) that at common law the taxes on both the houses and the land are recoverable as money paid under duress and the taxes on the houses are recoverable as money paid under a mistake of fact, and (2) that the taxes on both the houses and the land are recoverable, as taxes "erroneously or mistakenly paid," under Code, Art. 81, sec. 162.

1. The contention as to mistake of fact is without merit. The alleged mistake of fact is the Board's "mistake" in assessing houses that were not substantially completed. At common law recovery of money paid under a mistake of fact is limited to money paid or received under a mistake on the plaintiff's part, or a mutual mistake; it does not include money demanded and received by the defendant under an erroneous contention, without any mistake on the plaintiff's part. *Poe on Pleading*, 5th Ed., sec. 119.

The contention as to duress is also untenable under controlling Maryland decisions. In *Magness v. Loyola Federal Savings & Loan Association*, 186 Md. 569, 47 A. 2d 769, 774, we said that "the distinction between a voluntary payment and a payment under compulsion or duress has been different at different times and in different jurisdictions." We pointed out, with respect to taxes, that for about a century the Maryland rule has been the opposite of the federal rule. "The federal courts hold that ordinarily collection of an unlawful tax will not be prevented by injunction, because payment under protest and suit to recover is an adequate remedy at common law. *Elliott v. Swartwout*, 10 Pet. 137, 156, 157, 9 L. Ed. 373; *Cary v. Curtis*, 3 How. 236, 248-252, 254, 255, 11 L. Ed. 576. *City of Philadelphia v. [Diehl] Collector*, 5 Wall. 720, 730, 732, 733, [18 L. Ed. 614]; *Graham v. DuPont*, 262 U. S. 234, 254-258, 43 S. Ct. 567, 67 L. Ed.

965. This court has held that payment under protest, under threat and advertisement of sale, is a voluntary payment, because collection could be prevented by injunction. *Lester v. Mayor, etc., of Baltimore,* 29 Md. 415, 419, 420, 96 Am. Dec. 542; *cf. Baltimore City v. Harvey,* 118 Md. 275, 285, 286, 84 A. 487. With respect to taxes, the federal rule has been confirmed, and the Maryland rule frequently superseded, by statute. * * * Protest or lack of protest may constitute evidence of the compulsory or voluntary character of a payment, but if a payment is in fact voluntary, protest will not make it compulsory. *Chesebrough v. United States,* 192 U. S. 253, 259, 260, 24 S. Ct. 262, 48 L. Ed. 432; *Walk-A-Show, Inc., v. Stanton,* 182 Md. 405, 35 A. 2d 121." 186 Md. 569, 47 A. 2d 774. On February 19, 1912, the Supreme Court, by Mr. Justice Holmes, said that when the state has a summary remedy to collect taxes, such as distress, and the taxpayer "indicates by protest that he is yielding to what he cannot prevent, courts sometimes, perhaps, have been a little slow to recognize the implied duress under which payment is made." *Atchison, etc., Ry. Co. v. O'Connor,* 223 U. S. 280, 285, 286, 32 S. Ct. 216, 217, 56 L. Ed. 436 Ann. Cas. 1913 C, 1050. Nevertheless, on June 12, 1912, this Court indicated doubt whether, without express statutory authority, the City of Baltimore could "change the common law of the state" to the extent of authorizing refund of taxes paid under a law afterwards declared invalid. The rule of strict construction of statutes in derogation of the common law was held applicable to an ordinance of 1873. *Baltimore City v. Harvey,* 118 Md. 275, 282, 283, 84 A. 487, 490.

Plaintiff argues that the statutory prohibition against recording, in Anne Arundel County, a deed to property subject to unpaid taxes (P. L. L. (1930), Art. 2, secs. 201-204) constituted duress by compelling payment of these taxes in order to make any sales of houses or obtain any loan secured by lien on the property. Neither in the letter of March 25, 1944, nor in the declaration is it alleged that in fact payment was made for this pur-

pose or that any sale was effected or loan obtained thereby, or that any effort was made between October 27, 1943, and March 25, 1944, to pursue any remedy at law or in equity. It is therefore unnecessary to decide the point, but so long as the rule prevails that the direct lien of taxes, with threat of distress and sale, does not constitute duress, we could hardly ascribe such an indirect effect to the recording law.

2. All refunds of State taxes are matters of grace with the Legislature. *Red Star Line v. Baughman,* 153 Md. 607, 611, 139 A. 291. Art. 25, sec. 11 (ch. 129, Acts of 1807; ch. 337, Acts of 1852), repealed by ch. 701 of the Acts of 1941, provided that the county commissioners "shall, when satisfied that any error has arisen by assessing property not liable to be assessed, rectify such error and levy and pay to the proper person any money that may have been paid in consequence of such error." In *George's Creek Coal & Iron Co. v. Allegany County Commissioners,* 59 Md. 255, 261, in holding that the taxpayer was not entitled to a writ of mandamus but had its remedy by ordinary action at law, the court said: "All that it would be necessary for the plaintiff to show in such action would be that there had been error in assessing property not liable to assesment, and that the plaintiff had been required to pay taxes in consequence of that erroneous assessment"; and that the defendants had refused to levy for the money to refund the taxes; and that if the statute thus created a duty "to repay the taxes erroneously levied and received, that statute simply operates to change or modify the common law rule that taxes paid under a mistake of law cannot be recovered back." The court did not distinguish between error in paying and error in assessing, or between error on the taxpayer's part and error on the county's part, but evidently regarded such distinctions (material at common law) as immaterial under the statute. In *Baltimore City v. Harvey, supra,* 1912, 118 Md. 275, 84 A. 487, however, the Baltimore ordinance of 1873, for refund of "taxes paid in error," was strictly construed and held inap-

plicable to taxes "voluntarily paid" under a law afterwards declared invalid.

Art. 81, sec. 162, as enacted in the general tax revision act of 1929 (ch. 226, sec. 153), provided: "Whenever any person shall have erroneously or mistakenly paid to the County Commissioners of any of the counties of this State, or to the collector or treasurer for such County Commissioners, or to the Mayor and City Council of Baltimore, or its collector, more money for taxes or other charges than was properly and legally chargeable to or collected from such person, the said County Commissioners and the Mayor and City Council of Baltimore shall rectify the error and immediately levy and pay to such person any money that was so paid."

In *Mayor and City Council of Baltimore v. Home Credit Co.*, 1933, 165 Md. 57, 65, 66, 69, 166 A. 604, 167 A. 552 the court quoted the George's Creek Coal & Iron Co. case, *supra,* saying that what was said of the act of 1852 was applicable to the act of 1929; it was held that the remedies given taxpayers by appeal to the State Tax Commission were "not exclusive, but cumulative." The taxpayers were not confined to those remedies, but might adopt "the new and alternative remedy" created by the act of 1929. "These remedies are alternative, and the taxpayer is therefore put to his election." Section 162 (then 153) provided "a direct and simple method of relief." In *Tidewater Oil Co. v. County Com'rs of Anne Arundel County,* 168 Md. 495, 499, 501, 178 A. 221, mention was made of the "provisions for the benefit of a taxpayer whose assessment has been made under a mistake of law or fact, by which he is injuriously affected" and of "the essential elements of assessment errors on account of which suits for the recovery of tax payments might be maintained."

In *Mayor and City Council of Baltimore v. Gibbs,* 1934, 166 Md. 364, 171 A. 37, it was held that failure to contest a tax by appeal to the State Tax Commission and then to the courts did not preclude the taxpayer from asserting the unconstitutionality of the tax in a suit against

her to collect it. By chapter 407 of the Acts of 1935, sections 159 (then 150, relating to suits for taxes), 161 (then 152, relating to refunds of State taxes) and 162 (then 153) of Article 81 were amended by the addition of provisos apparently intended to overcome, to the extent specified, the *Gibbs* and *Home Credit* cases, *supra.* The proviso in section 162 was "that no refund under * * * this or the preceding section * * * shall be required in any case where the validity of the assessment upon which such taxes were levied might have been challenged by way of appeal therefrom under any of the provisions of this article." The proviso in section 159 was, and is, that "this section shall not be construed to permit the defendant to interpose any defense which he might have raised by way of appeal from the assessment upon which such tax was levied." By the Act of 1937, ch. 469, the proviso in section 162 was amended in details not now material. By the Act of 1941, ch. 701, the proviso was amended to its present form. In all of these amendments since 1935 the Legislature seems to have adhered to the principle that where there is a statutory right of appeal, the statutory remedy is exclusive. Compare *Wannenwetch v. City of Baltimore,* 115 Md. 446, 450, 81 A. 3; *Stark v. State Board of Registration,* 179 Md. 276, 19 A. 2d 716; *Tawes v. Williams,* 179 Md. 224, 17 A. 2d 137, 132 A. L. R. 1105; *State ex rel. Holland v. County Commissioners of Baltimore County,* 46 Md. 621.

In sections 161, 162 and 162A of Art. 81, the contrast is between ordinary and special taxes. Ordinary taxes are defined as "direct taxes imposed in respect of real or personal property" (Art. 81, sec. 4), "valued and assessed" by the county or city, in some instances, by the State authorities (Code, Art. 81, sec. 10). In the case of ordinary taxes, refund is only allowed where the claimant has "erroneously or mistakenly paid * * * more money for ordinary taxes than was properly and legally chargeable to or collectible from such person," whereas in the case of other taxes, refund is allowed where the claimant has "erroneously or mistakenly paid * * * more

money * * * than was properly and legally payable, *or shall have paid any special taxes which were erroneously or illegally assessed* * * *." (Italics supplied.) In the one case the error or mistake must relate to the payment, in the other it may relate to the payment or the assessment. To confirm this obvious differentiation, section 162 further provides: "* * * no refund shall be made or approved in any case where it appears that the assessment upon which such taxes were levied and collected has become final and has not been modified on appeal as provided in this Article, and the only basis for the refund is a claim that such assessment was erroneous or excessive."

The attack here is upon the validity of the assessment made on October 27, 1943. The claim is that said taxes were erroneously or illegally assessed because (1) there was no preliminary notice of a proposed assessment, but merely a notice of final assessment, (2) the final assessment was made after the date of finality (October 1, 1943), and (3) the assessment included buildings and improvements not substantially completed on the date of finality.

(1) As to the first point, the declaration, as particularized, shows that Mr. Robertson, the vice-president of the appellant, had actual notice of the proposed assessment, and had agreed to the valuations set forth in the notice. Indeed, the declaration itself asserts that Robertson "agreed with the Supervisor of Assessments * * * that the valuation and assessment for each and all of said houses, and * * * lots * * * would be acceptable, if and when it was right and proper to so value and assess the same." And in his letter of protest to payment of the tax bill, Robertson stated "this position is in view of the fact that we were assessed for the full amount on all houses for the full year, whereas a great many of the houses were not completed," without any contention as to a lack of notice. If the taxpayer had actual notice of the assessment and agreed to the figures therein contained, it would seem to be carrying a technical require-

ment to unreasonable extremes to hold the assessment invalid on this ground. The ten day notice is simply a means of informing the taxpayer of the proposed action, so that he may have an opportunity to present his side of the case. Under the circumstances of the case at bar, we hold that the tentative notice was waived. Compare *First Mortgage Bond Homestead Association v. Baker*, 157 Md. 309, 314, 145 A. 876.

(2) On the second point, the appellants state in their brief that "the declaration, however, alleges the assessment was made (time undetermined otherwise) before the date of finality." Presumably this refers to the tentative valuation that was agreed to, including the reclassification of the lots and the new assessment of the improvements. If a tentative assessment was agreed to before the date of finality, excepting only the claim as to unfinished houses, the subsequent assessment of the improvements would be valid. In *Skinner & Sons Ship Bldg. Dry Dock Co. v. Baltimore*, 96 Md. 32, 53 A. 416, it was held that where a structure was substantially completed by the date of finality it could be assessed thereafter as escaped property. Code, Art. 81, sections 29, 151. See also *Hamburger & Sons v. City of Baltimore*, 106 Md. 479, 68 A. 23.

(3) Upon receipt of the notice of assessment the appellant could have entered an appeal to the State Tax Commission from the final assessment, or he could have applied to the County Commissioners for a hearing (as the notice invited him to do), on the only point he questioned, *i.e.*, whether some of the buildings were not substantially completed (Art. 81, section 190). With or without a hearing, he could have appealed to the State Tax Commission, from the action of the County Commissioners or their failure or refusal to act. (Art. 81, sec. 191). On questions of fact, the decision of the Tax Commission is final. Code, Art. 81, secs. 191-194; *Doub v. State Tax Commission*, 179 Md. 186, 17 A. 2d 114; *Oak Lawn Cemetery v. County Com'rs of Baltimore County*, 174 Md. 280, 198 A. 600, 115 A. L. R. 1478: *Schluderberg*

& T. J. Kurdle Co. v. Mayor and City Council of Baltimore, 151 Md. 603, 135 A. 412. The question of substantial completion is peculiarly one within the province of the taxing authorities. To allow a collateral attack upon the assessment would defeat the obvious purpose of these provisions. But whether the assessment was valid or invalid, or might have been set aside on direct appeal for error of fact or law, the short answer to the present claim is that the refund statute does not permit recovery. The assessment became final on October 27, 1943, and was not modified by appeal, and the only basis for the refund is a claim that the assessment was erroneous or excessive.

The word "erroneous" is broad enough to cover all types of error, even those that may invalidate an assessment or render it void. This is not only the plain meaning of the word, but such construction would appear to carry out the legislative policy to make the remedy by way of appeal exclusive in this type of case.

*Judgment affirmed, with costs.*

MARKELL, J., dissented as follows:

"Men must turn square corners when they deal with the Government." *Rock Island, A. & L. R. Co. v. United States,* 254 U. S. 141, 143, 41 S. Ct. 55, 65 L. Ed. 188. The rule that taxing statutes are construed most strongly against the government, and in favor of the citizen (*Gould v. Gould,* 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; *Magruder v. Hospelhorn,* 173 Md. 62, 194 A. 839), no longer receives even lip service. Courts properly are alert to enforce laws for collection of taxes and prevention of tax evasion. Nevertheless taxpayers have rights. The fair meaning of words ought not to be distorted, decisions of long standing ignored, and disputed questions of fact decided on demurrer, in order to shrink a remedial statute, stretch a subsequent exception, and thereby enable the government to retain money improperly and illegally collected.

(a)   It may be that plaintiff in fact agreed upon the alleged assessment and thereby waived notice and acquiesced. *Monticello Co. v. Baltimore City,* 90 Md. 416, 433, 45 A. 210; *Allegany County Commissioners v. Union Mining Co.,* 61 Md. 545, 556.   But the declaration alleges, and the demurrer admits, that plaintiff did *not* so agree. If the houses were in fact substantially completed on October 1, 1943, they could still be assessed, as new and escaped property, for 1944.   Art. 81, secs. 29, 34, 151.

It is not shown that the alleged assessment was "made on October 27, 1943."   Plaintiff received notice, dated October 27, 1943, "that you have been assessed;" whether on or how long before October 27th is not shown.   As plaintiff had received no notice of a proposed assessment, and the alleged assessment may have been made more than thirty days before October 27, 1943, plaintiff could not rely upon *appeal from the assessment.* It could only have applied to the county commissioners to abate the void assessment and appealed from refusal to abate. *Wannenwetch v. City of Baltimore,* 115 Md. 446, 450-453, 81 A. 3.

(b)   Long ago and repeatedly this court has held that an assessment without previous notice is not merely erroneous but void—not an assessment at all. *Wannenwetch v. City of Baltimore, supra,* and cases cited.   The statute (Art. 81, sec. 24) requires *previous* notice of a *proposed* assessment; *subsequent* notice of a *"tentative"* assessment, with an invitation to be heard, is not sufficient. *County Comr's of Allegany County v. New York Mining Co.,* 76 Md. 549, 556-558, 25 A. 864 (opinion by Judge Alvey) ; *cf. Meyers v. County Com'rs of Baltimore County,* 83 Md. 385, 392-394, 35 A. 144, 34 L. R. A. 309, 55 Am. St. Rep. 349.

(c)   Art. 81, sec. 162 originated (as section 153) in the general tax revision Act of 1929.   The federal income tax had then made generally known the difference between the Maryland and the federal rules as to tax refunds.   This section was remedial legislation, intended to broaden the Acts of 1807 and 1852 (Art. 25, sec. 11,

repealed in 1941), and give the taxpayer "a direct and simple method of relief" in respect of "assessment errors." *Mayor and City Council of Baltimore v. Home Credit Co.*, 165 Md. 57, 65-66, 166 A. 604, 167 A. 552; *Tidewater Oil Co. v. County Com'rs of Anne Arundel County*, 168 Md. 495, 499, 501, 178 A. 221. Taxes "erroneously paid" are taxes paid on an erroneous amount, "more than was properly * * * chargeable or collectible," including payments based on "assessment errors." "Erroneously or mistakenly" paid is not mere tautology for "mistakenly." Narrowly construed, this legislation amounts to a trick to tease taxpayers with an illusory remedy, which narrows the Acts of 1807 and 1852 and embalms in statute form the Maryland rule as to "voluntary" payments. Comparison with section 162A, which originated in 1941, throws no light on the construction of section 162, which originated in 1929.

(*d*) The proviso in section 162 (added in 1935, amended in 1937, 1941 and 1943) carved out of this section a large part of its original content. The proviso is, however, applicable only to an "erroneous or excessive" assessment, which "has become final and has not been modified on appeal"—not to a void assessment, which was made without notice, was not an assessment at all and could not have been "modified on appeal."

Judge Collins authorizes me to say that he concurs in this dissent.